DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Georgia CONGLETON, Respondent.

No. 83–3410.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1984.

Decided Sept. 13, 1984.

Rehearing Denied Nov. 19, 1984.

J. Michael O'Neill, Jeffrey J. Bernstein (argued), U.S. Dept. of Labor, Washington, D.C., for petitioner.

Neville Smith, Manchester, Ky., Benefits Review Board, Washington, D.C., Bonnie Hoskins (argued), Hyden, Ky., for respondent.

Weick, Senior Circuit Judge, filed a dissenting opinion.

Before KRUPANSKY and WELLFORD, Circuit Judges; and WEICK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The Director of the Office of Workers' Compensation, United States Department of Labor (Director), appealed from an award of black lung benefits to Georgia Congleton (respondent), a miner's widow. The award was made initially by an administrative law judge (a.l.j.) and subsequently affirmed by the Benefits Review Board (Board).

Thomas Congleton married the respondent in 1927. He died in January, 1967, at the age of 67. On October 15, 1971, respondent filed a claim for widow's benefits

under the Black Lung Benefits Act (the Act), 30 U.S.C. § 901 *et seq.* The claim was denied by the Social Security Administration in June, 1974, and the denial was affirmed by the Department of Labor in August, 1979.

On July 9, 1980, a formal hearing was held before an a.l.j. in London, Kentucky. Evidence adduced at the hearing included Social Security records documenting fifty-one quarters of coal mine employment by the deceased; a chronological work history prepared by respondent which purported to establish almost thirty years of coal mine work by her husband; numerous (and often conflicting) affidavits from former co-workers, relatives and friends of the deceased which stated that he had worked in coal mines most of his adult life and which also recorded the various affiants' recollections of decedent's breathing difficulties prior to his demise; testimony of the respondent and her daughter as to the longevity of the miner's employment in numerous coal mines; medical records of Drs. Carl Cooper, Jr., and F.W. Hare, both of whom had treated the deceased during his lifetime; an X-ray taken April 14, 1964 which had been interpreted as showing "normal lung fields" by an unidentified reader; and the miner's death certificate which listed myocardial infarction as the cause of death.

Based on the above evidence, the a.l.j. issued a decision and order awarding benefits in accordance with 30 U.S.C. § 921(c)(5), which provides a rebuttable presumption of entitlement to benefits for a widow whose husband had been engaged in coal mine employment for twenty-five years or more. The Board affirmed the a.l.j.'s decision on December 16, 1982, and the Director's motion for reconsideration was denied by the Board on April 12, 1983. On appeal, the Director challenged the a.l.j.'s findings that (1) the respondent was entitled to the twenty-five year presumption, and (2) that the Director had failed to rebut the presumption.

The twenty-five year presumption applicable to the case at bar reads in pertinent part:

In the case of a miner who dies on or before March 1, 1978, and who was employed for twenty-five years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits.... unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis.

30 U.S.C. § 921(c)(5); § 411(c)(5) of the Act.

The a.l.j. found that the miner worked "well over twenty-five years" in the coal mines. This finding of fact can be upheld only if it is supported by substantial evidence. *Haywood v. Secretary,* 699 F.2d 277 (6th Cir.1983). However, it is critical to the appellate review process that the a.l.j. clearly set forth the rationale for his findings of fact and conclusions of law. Section 557(c)(3)(A) of the Administrative Procedures Act mandates that "... all decisions shall include a statement of—(A) findings and conclusions, *and the reasons or basis therefore,* on all the material issues of fact, law or discretion presented on the record ..." (emphasis added). The courts have respected this requirement by remanding cases where the reasoning for the a.l.j.'s conclusion is lacking and therefore presents inadequate information to accommodate a thorough review. *See, e.g., Maxey v. Califano,* 598 F.2d 874, 875, 876 (4th Cir.1979); *Schaaf v. Mathews,* 574 F.2d 157 (3rd Cir.1978); *Arnold v. Secretary,* 567 F.2d 258 (4th Cir.1977).

In the instant case, the a.l.j. merely credited the testimony of the respondent, her daughter, and the nine affidavits of former co-workers and friends as "unchallenged statements" which support his finding of twenty-five years of coal mine employment. However, the a.l.j. failed to provide his rationale for crediting this evidence. A more complete analysis by the a.l.j. is crucial in this case since the respondent's testimony was uncertain as to the date when the decedent had terminated his coal mine employment—either in 1953 or 1958—especially in light of the inconsistencies and wide disparities appearing in the various

affidavits filed on claimant's behalf attesting to the miner's coal mine employment history during the periods of his lifetime.[1] In addition, the a.l.j. completely ignored the Social Security earnings records which disclosed less than ten years of total coal mine employment between 1937 and 1953. (The Social Security records also reflect numerous periods of employment in non-coal mine related jobs, including work at Ford Motor Company, an ice company, International Harvester,[2] a foundry and a shipyard.)

The dissent argues that "we ought not to be 'disposed to overturn a sound decision if the agency's path, although not ideally clear, may be reasonably discerned,' " slip op. at 12, (quoting Benmar Transport & Leasing Corp. v. ICC, 623 F.2d 740, 746 (2d Cir.1980)), and further asserts that "one can readily see that ALJ Egan was pursuaded by Mrs. Congleton's evidence ..." Id. While the majority agrees with the dissent's basic premises in this respect, we remain steadfast in our conviction that an a.l.j.'s conclusory opinion, which does not encompass a discussion of the evidence contrary to his findings, does not warrant affirmance. For even in applying the deferential standard of "substantial evidence," the reviewing court must take into account the evidence of record that detracts from as well as supports the challenged findings of fact. See Universal Camera v. NLRB,

340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); Richardson v. Secretary, 735 F.2d 962, 964 (6th Cir.1984) (per curiam); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir.1978). In the instant case, the evidence presented was simply too vague and conflicting to support the decision in the form rendered by the a.l.j.

■ In sum, the a.l.j.'s failure to explain his reason for crediting certain testimony while ignoring more substantial evidence would normally necessitate a remand with directions for more specific findings of fact. However, remand is not required in this case.

■ As mentioned previously, the Director's second argument was that even if the presumption was properly raised, it was effectively rebutted as a matter of law. Rebuttal is accomplished when the Director has shown either the absence of reduced work ability or the absence of the disease at the time of death. See 20 C.F.R. §§ 727.204(c) and (d).

The medical evidence in the instant case unequivocally established that the deceased miner was not suffering from the disease at the time of his death. The medical records of the decedent's treating physicians, Drs. Cooper and Hare, detailed a long history of serious heart disease, but

1. The affidavits are, for the most part, nonspecific or contradictory as to dates of employment and names of coal companies for which the deceased purportedly worked. For example, one Edward Gregory averred that the deceased worked "20 years or more" in the coal mines, but also listed dates which conflicted with the deceased's non-coal mine employment as established by Social Security records. Another affiant, one William Gregory, stated that he knew the miner for 45 years and that the deceased "worked in the coal mines for the entire number of years that I knew him". Again, this statement conflicted with Congleton's non-mine employment. Even the deceased's first cousin, Thomas Jefferson Congleton, a former coal company owner and manager, acknowledged that "there are no longer any pay records available" regarding the deceased's tenure with that company and that "it is too long to remember specifically" what dates decedent worked. None of these inconsistencies or admitted memory failures were addressed by the a.l.j.

2. The dissent alleges that the majority "erroneously characterizes" Congleton's employment by International Harvester as non-coal mine related because his widow testified that he worked as a coal miner for that company in Benham, Kentucky. Slip op. at 13. However, the dissent overlooks the fact that the "Chronological Work History" prepared by the miner's widow is void of any reference to coal-related work with International Harvester, although it does list coal employment in Benham, Kentucky with Bethlehem Steel in 1940. To further complicate the issue, Social Security records reflect that the decedent was employed with International Harvester in Columbus, Ohio during 1940 and 1941, and with the Bethlehem/Fairfield Shipyard in Bethlehem, Pennsylvania in 1942 and 1943. In sum, these discrepancies are illustrative of the conflicts in evidence which the a.l.j. failed to reconcile.

were completely devoid of any reference even inferring any chronic lung impairment. To the contrary, during one examination (date unknown), Dr. Hare noted that the miner's "lungs were clear as to auscultation and percussion." In addition, the miner's death certificate listed only myocardial infarction as the cause of death. While the death certificate by itself would not be sufficient to rebut the presumption, *see* 20 C.F.R. § 727.204(d)(4), the certificate, when paired with the extensive medical records of the miner's own treating physicians which contain absolutely no indication that the miner was suffering from pneumoconiosis, constitute sufficient grounds for rebuttal.[3]

██ It must be emphasized that the above holding is not, as the dissent poses, the result of an impermissible shifting of the burden of proof from the Director to the claimant. The court is fully cognizant that the burden remains squarely on the Director to establish that the deceased minor did not suffer from pneumoconiosis at the time of his demise in order to effectuate rebuttal. Today's decision merely enunciates the simple and elementary premise that when the Director effectively proves an absolute absence of chronic lung disease in any of the medical records available regarding the deceased, especially where, as here, the miner's own physicians closely monitored his health for a number of years before his death, the Director has rebutted the presumption of disability due to pneumoconiosis as a matter of law.

To hold otherwise would, in effect, permit an *irrebuttable* presumption in favor of the claimant. Despite the liberal construction normally accorded the Black Lung Act, this court cannot, by judicial decree, legislate the conclusion suggested by the dissent. If the presumption has not been rebutted by the facts of the instant

case, then this court is at a loss to conceive any situation in which the Director could prevail.

In sum, the a.l.j. erred in not setting forth, in definitive language, his assessment of the relative credibility of the evidence which led to his conclusion that the claimant's decedent had worked in the coal mines for twenty-five years or more. But even assuming, *arguendo*, that the respondent had established entitlement to the twenty-five year presumption said presumption, was rebutted.

The decision of the Board and the a.l.j. is reversed and the award of benefits vacated.

WEICK, Senior Circuit Judge, dissenting.

Georgia Congleton, widow of the deceased underground coal miner, Thomas Congleton, filed her claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, on October 15, 1971. The petitioner, who is the Director, Office of Workers' Compensation, United States Department of Labor, in accordance with the Act and applicable regulations, referred the case to the Office of Administrative Law Judges for a formal hearing. The Administrative Law Judge (ALJ), Thomas G. Egan, conducted an evidentiary hearing, taking the testimony of witnesses and admitting exhibits. The ALJ rendered his Decision And Order—Award of Benefits on November 13, 1980. It reads as follows:

This proceeding arises from a claim for benefits under the Black Lung Benefits Act, U.S.C. 901 *et seq.* In accordance with the Act, and the regulations issued thereunder, this case was referred to the Office of Administrative Law Judges by the Director, Office of Workers' Compensation Programs for a formal hearing.

---

**3.** Although the negative X-ray report submitted into evidence was also indicative of the absence of pneumoconiosis, it did not bear the name or qualifications of the technician who took the film nor the physician who interpreted it, and therefore does not meet the requirements for the admission of X-ray evidence as found in 20

C.F.R. § 718.102(c). As a result, the X-ray has no evidentiary value and cannot be considered by this court, as 20 C.F.R. § 718.102(e) states that "[n]o chest X-ray shall constitute evidence of the presence or absence of pneumoconiosis unless it is in substantial compliance with the requirements of this section ..."

Benefits under the Act are provided to persons who are totally disabled within the meaning of the Act due to pneumoconiosis, which arose out of coal mine employment, or to the survivors of persons who were totally disabled at the time of their death or whose deaths were caused by pneumoconiosis. Pneumoconiosis is a dust disease of the lungs arising from coal mine employment and is commonly known as black lung.

A formal hearing was held in London, Kentucky, on July 9, 1980, at which all parties were afforded full opportunity to present evidence and argument, as provided in the Act and the regulations issued thereunder, found in Title 20 Code of Federal Regulations. New Parts 725 and 727 were added to Title 20 on August 18, 1978, and were published in the Federal Register on that date (43 F.R. 36772 *et seq.*). Regulation section numbers mentioned in this Decision and Order refer to sections of Title 20.

## Background

The claimant, Georgia Congleton, testified that when she married Thomas Congleton in 1927, he was a working coal miner. She creditably testified that with the exception of a short period of time in the late twenties and two years during World War II, his main occupation was that of an underground coal miner. She further testified that her husband left coal mine work in 1958.

Mrs. Alma Fay Watkins, claimant's daughter, testified that she can remember that when she was four years of age (1933), her father was working as a coal miner. Mrs. Watkins' testimony was essentially the same as her mother's testimony regarding the decedent's coal mine employment.

The record contains mine [sic] statements of co-workers, neighbors and coal company pay roll clerks (C–1A thru C–1E) (D–5–9–11). The unchallenged statements support the claimant's testimony. Exhibits C–1A thru C–1E indicate that the claimant started coal mining in 1922

or 1923. Based on the foregoing it is concluded that the claimant's husband worked as a coal miner well over 25 years.

This matter involves a claim by the widow of a coal miner who had, prior to his death on January 17, 1969, completed a work record in excess of 25 years in the mines. Squarely at issue, then, is the application of Section 411(c)(5) of the Act. The pertinent section reads, in part, "In the case of a miner who dies on or before the date of the enactment of the Black Lung Benefits Reform Act of 1977 who was employed for 25 years or more in one or more coal mines before June 30, 1971, eligible survivors of such miner shall be entitled to the payment of benefits ... unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis." (section 411(c)(5)).

Under this provision, all a widow of a miner who died before March 1, 1978, need show is a work record by her spouse totaling 25 years or more of coal mine employment before June 30, 1971. Mrs. Congleton, having carried the burden of proof on this issue, is, as a matter of law, entitled to benefits unless, at the time of death, the miner was neither totally nor partially disabled due to pneumoconiosis. The burden of demonstrating the absence of totally or partially disabling pneumoconiosis rests with the Director.

Under Section 411(c)(5) of the Act and its implementing regulation 20 CFR § 727.204, those who would contest the widow's claim must establish that the miner was not partially disabled at the time of death.

The chest X-ray of April 14, 1964, (D–14) wherein there is no diagnoses of pneumoconiosis is not alone sufficient to rebut the presumption of entitlement. (727.204(d)(3)) The same is true of the death certificate which does not mention pneumoconiosis, § 725.204(d)(4).

The burden of proving partial disability is not upon the claimant nor does the claimant have the burden of proving that

partial disability is the result of pneumoconiosis. The record through testimony and affidavits demonstrates that the decedent had a reduced ability due to a breathing difficulty to engage in coal mine or comparable work. The record also indicates that the decedent had a heart problem. In this case the party opposing the claim has the burden of demonstrating that the decedent did not have pneumoconiosis. That burden necessary to rebut the presumption has not been met (727.204(c)).

## ORDER

It is ORDERED that the Black Lung Disability Trust Fund pay Georgia Congleton all benefits to which she is entitled as of January 1, 1974.

(App. at 4–7) (footnote omitted).

Petitioner appealed from the decision and order of the ALJ to the Benefits Review Board, which appeal was heard by the Board and affirmed in a per curiam opinion. (App. at 8–9). The Benefits Review Board held, after careful consideration of the arguments and the evidence in the record, "that the Decision and Order of the administrative law judge is supported by substantial evidence and is in accordance with law." (App. at 9). Petitioner then filed a motion for reconsideration which the Board denied on April 12, 1983. The Director then filed his Petition For Review in this Court and was heard on briefs, appendix and oral argument.

## I.

In my opinion, the approach taken by the majority in this case will severely undercut the intent of Congress in establishing a presumption of eligibility for black lung benefits based on 25 years or more service as a coal miner. The Court's disposition of this case also fails to heed the proper standard of judicial review for administrative determinations.

With respect to his threshold finding of the required period of coal mine work to invoke the presumption of 30 U.S.C. § 921(c)(5), the ALJ credited the testimony and affidavits of Thomas Congleton's family, neighbors and co-workers, all of which supported a finding that Congleton was employed as a coal miner more or less continuously (with only seasonal layoffs and a few years of other employment) from 1922 through 1958, a period of 36 years. He therefore did not consider it necessary to identify the exact length of service in the mines since it was clearly in excess of 25 years.

Counsel for the petitioner argues that Mrs. Congleton's testimony and the statements of the other affiants were too vague and not sufficiently consistent to permit a finding of 25 years service. Also, it is claimed that the Social Security earnings records for January 1937 through December 1969, introduced in evidence, only reflected nine and a half years of coal mining during that period. However, neither of these factors establish the lack of substantial evidence necessary to overturn the findings of an ALJ. *See, e.g., Haywood v. Secretary of Health and Human Services*, 699 F.2d 277, 285 (6th Cir.1983).

Although "[a] bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court," *Maxey v. Califano*, 598 F.2d 874, 876 (4th Cir. 1979), and a court should not have to speculate as to an ALJ's reasoning process, *Schaaf v. Mathews*, 574 F.2d 157, 160 (3d Cir.1978), we ought not to be "disposed to overturn a sound decision if the agency's path, although not ideally clear, may reasonably be discerned." *Benmar Transport & Leasing Corp. v. ICC*, 623 F.2d 740, 746 (2d Cir.1980). Here, one can readily see that ALJ Egan was persuaded by Mrs. Congleton's evidence, the thrust of which showed that her late husband had spent most of his working life in Kentucky coal mines operating a cutting machine that churned up great amounts of coal and rock dust. It is likewise apparent that the ALJ did not find the Social Security records dispositive of the issue. We should agree with both of these findings.

Given the inherent difficulties of proving an exact period of employment in an intermittent industry like coal mining (where layoffs are often brief but recurring), and the fact that much of the evidence of Thomas Congleton's mining career—which began over 60 years ago—must come from the memories of simple, ordinary (and frequently elderly) people who were not likely to keep extensive records, it was not unreasonable for the ALJ to have accepted the statements of Mr. Congleton's widow and former co-workers who remember, albeit imprecisely, that he had been a miner for at least 25 years of his life. In the absence of mine company records (which were apparently unavailable after all this time), such evidence is the only means of showing the decedent's entire period of coal mine work. The earnings records provided by the Social Security Administration do not effectively detract from this evidence, in light of the fact that such records have only been kept since 1937, appear to be incomplete (no earnings—not even self-employment—are shown for the nearly five-year period between July 1945 and April 1950), and are consistent with the testimony of Mrs. Congleton and her daughter with respect to the decedent's employment by Ford Motor Co. at times during the 1930's and his work at a Maryland shipyard in 1942–43. The majority erroneously characterizes Congleton's employment by International Harvester in 1940–41 as non-coal mine related, whereas his widow testified that he worked as a coal miner for that company in Benham, Kentucky. (App. at 68).

However, regardless of whether or not the ALJ adequately explained the reasons for his finding that Thomas Congleton had worked in the mines over 25 years, the majority errs in holding that the Director has rebutted, as a matter of law, any presumption that Mr. Congleton was partially or totally disabled by pneumoconiosis at the time of his death in 1969. Such a holding, on the record of this case, effectively shifts back to the claimant the burden of proving that the miner in question suffered from black lung disease, and vitiates the entire purpose behind establishing a presumption of eligibility for benefits based solely on length of service in the mines.

In support of their finding that the medical evidence of record "unequivocally established" that Thomas Congleton did not suffer from pneumoconiosis at the time of his death, the majority points only to his death certificate (stating myocardial infarction as the cause of death) and the so-called "extensive medical records" covering the last five years of his life, neither of which make any reference to black lung or other respiratory impairment. The majority also mentions that Dr. F.W. Hare, Congleton's treating physician during his hospitalization following a 1964 heart attack, found his patient's lungs to be "clear as to auscultation and percussion."

The significance of Dr. Hare's findings is greatly overstated by the majority. As recently noted by Judge Martin of this Court:

[P]neumoconiosis is a slow, progressive disease. Its characteristics and symptoms often do not manifest themselves in a way that promote immediate detection. In some cases the disease may take years before it is readily detectable.

*Collins v. Secretary of Health and Human Services,* 734 F.2d 1177, 1179–80 (6th Cir.1984). Here, one can hardly say that the results of a medical examination taken nearly five years before the patient's death will be strongly probative of his condition immediately prior to his demise. Moreover, the fact that Congleton was being treated by Dr. Hare for a more immediate threat to his life (i.e., the heart condition) would logically explain the failure to explore or treat another, less critical malady, namely, pneumoconiosis, which the decedent unquestionably had. This is borne out by Dr. Carl Cooper, Congleton's treating physician from 1964 until his death, who stated in 1980:

In reviewing the medical records of Mr. Thomas Congleton, I find that the primary treatment rendered in this office was for coronary artery disease and spe-

cifically angina pectoris and myocardial infarction. No specific mention was made of chronic lung disease.

In view of the seriousness of his coronary artery disease which he was being treated for at the time, it certainly would not preclude his having had trouble with chronic lung disease which certainly would have been secondary at that time. (App. at 56).

In sum, there is no substantial evidence to *support* a finding that the presumption of entitlement to black lung benefits was rebutted, much less to *require* such a finding as a matter of law as the Court holds today. Even assuming the ALJ could have found sufficient rebuttal evidence in this record, a contrary conclusion was certainly not precluded. "The reviewing court may not set aside an inference because it finds the opposite one more reasonable, or because it questions its factual basis." *Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797, 802 (7th Cir.1977) (citing *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)). This Court should not impose its own view of the evidence rather than follow the factual findings of an ALJ which are supported by substantial evidence. *Moore v. Califano*, 633 F.2d 727, 729 (6th Cir.1980). The only question in this case was whether there is such evidence in the record as a reasonable mind might accept as adequate to support the conclusion that the 25-year presumption was not rebutted. *See Prater v. Harris*, 620 F.2d 1074, 1084 (4th Cir.1980).

Congress, in amending the original Federal Coal Mine Health and Safety Act in 1972, intended the Act "to be liberally construed in favor of the miners to insure compensation in worthy cases despite the extreme difficulty of proving the existence of pneumoconiosis by clinically certain medical evidence." *Bozwich v. Mathews*, 558 F.2d 475, 479 (8th Cir.1977). Five years later, the Act was again amended to further expand the means by which entitlement to benefits could be established, including a rebuttable presumption that a person who had worked as a coal miner for 25 or more years was partially or totally disabled due to black lung disease at the time of his death. Black Lung Benefits Reform Act of 1977, Pub.L. 95–239, § 3(a)(3), 92 Stat. 96 (1978) (codified at 30 U.S.C. § 921(c)(5) (1982)).

The legislative history of the 1977 Act explains the Congressional rationale behind such a broad presumption:

In recognition of the historically demonstrated and exceedingly high probability of total disability (80.89 percent), and out of concern for an equally probable risk of error in the remaining cases, an objective test was established to simply provide part B benefits payments to all claimants whose claims had been denied and who could demonstrate 30 or more years of underground coal mining experience [reduced to 25 or more years of employment before June 30, 1971, and restricted only to the eligible survivors of miners with such experience who died on or before March 1, 1978, in the final draft of the Act]. This assertedly rational and reasonable approach was elected over discretely restructuring the eligibility determination process in order to reach such legitimate and compelling cases; a restructuring, incidentally, which would have produced a complex, unmanageable, and enormously costly approach to ascertaining benefits entitlements.

H.R.Rep. No. 95–151, 95th Cong., 1st Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Ad.News 237, 241. The majority, in concluding that the absence of sufficient medical evidence of pneumoconiosis in the record served to rebut Mrs. Congleton's presumed entitlement to benefits, has transposed the evidentiary burdens intended by Congress, and negated the whole point of section 921(c)(5)—to relieve the survivors of coal miners who labored for 25 years *or more* of the difficult burden of proving partial or total disability due to black lung disease at the time of death, *and* to permit denial of benefits *only* if the

*Government proves* such disability did not exist.

The effect of the Court's holding in this case, where the record is devoid of evidence which directly and persuasively shows that Thomas Congleton did not suffer from lung disease prior to his demise, is to require his widow to come forward with additional medical evidence to support her testimony, and that of his daughter and associates, which uniformly described how Mr. Congleton suffered greatly from respiratory difficulties in his final years. Manifestly, Congress did not intend to place such a burden in these cases where the mere fact of highly prolonged exposure to coal and rock dust almost certainly led to some form of pneumoconiosis. Whatever disagreement the majority may have with respect to the wisdom of this policy should have been addressed to the legislators who enacted it, not inflicted on Mrs. Congleton who merely relied on it.

Over 13 years have elapsed since Mrs. Congleton filed her claim on October 15, 1971, and it has not yet been conclusively determined. Petitioner ought not to be proud of this record. I would affirm the decision of the ALJ, affirmed by the Benefits Review Board, awarding black lung survivor's benefits to this claimant, and deny the petition for review filed by the petitioner who should have supported the decision. The petitioner should be bound by the decision of the ALJ affirmed by the three member Benefits Review Board, which allowed benefits to Mrs. Congleton. The Act grants no power to petitioner either to award or deny benefits, nor does the Act require petitioner either to approve or disapprove such benefits. There is a serious question whether petitioner even has standing to petition this Court for review of the decisions of the Benefits Review Board. It is most unusual and unprecedented for the director of an agency to petition for review of his own agency's decisions. *See I.T.O. Corp. of Baltimore v. Benefits Review Board,* 542 F.2d 903, 908 n. 5 (4th Cir.1976). This is a very important case, and respondent Georgia Congleton should petition this Court for rehearing in banc, or a judge of this Court should so move.