765 F.2d 145
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JOE INNIS, PETITIONER,
v.
RAYMOND DONOVAN, SECRETARY, OFFICE OF WORKERS' COMPENSATION,
UNITED STATES DEPARTMENT OF LABOR; BENEFITS REVIEW
BOARD, RESPONDENTS.
 NO. 84-3373
 United States Court of Appeals, Sixth Circuit.
 5/14/85
 
 ON PETITION FOR REVIEW OF A DECISION OF THE BENEFITS REVIEW BOARD
 Before: KENNEDY and CONTIE, Circuit Judges; and KINNEARY, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Innis petitions for review of a Benefits Review Board (Board) decision denying black lung benefits. The Board reversed an Administrative Law Judge's (ALJ) decision awarding benefits. For the reasons set forth below, we uphold the Board's decision.
 
 I.
 
 2
 The plaintiff, who is forty-three years old and has a fourth grade education, last worked in Kentucky's coal mines in June 1974. Innis originally applied for benefits in October 1976. Although Innis told examining physicians that he had worked for the years in the nation's coal mines, both the ALJ and the Board determined, on the basis of social security records, that the plaintiff had worked only 5-3/4 years in the mines. A summary of the medical evidence follows.
 
 
 3
 On January 27, 1975, Dr. Penman examined Innis, who complained of breathing problems. Penman read a chest x-ray as showing stage I pneumoconiosis progressing to stage II. Lung function tests revealed, however, that lung function was unimpaired.
 
 
 4
 Dr. Stumbo provided deposition testimony on June 25, 1975. Stumbo concluded from x-rays that Innis had level 1/1p pneumoconiosis. This condition, which had been caused by coal mining, rendered the plaintiff incapable of working in the mines or in any other dusty environment. A ventilatory study resulted in a maximum voluntary ventilation (MVV) reading of 89 and a one second forced expiratory volume (FEV1 ) reading of 2.71. Taking into account Innis' age, education, previous training, pneumoconiosis and medical conditions other than the lung disease, Dr. Stumbo concluded that Innis was totally unable to work.
 
 
 5
 On September 22, 1975, Dr. Jones took chest x-rays and performed a ventilatory study. The x-rays showed small round fibrotic opacities in all zones of both lungs. The ventilatory study yielded an MVV reading of 158 and an FEV1 reading of 2.78. Jones diagnosed level 1/1p pneumoconiosis and concluded that the plaintiff should avoid exposure to dust.
 
 
 6
 On January 24, 1976, Innis complained to Dr. Adams about shortness of breath and production of yellow phlegm. Adams read a chest x-ray as showing 'bilateral fibro nodule disease and linear fibrosis consistent with a diagnosis of coal worker's pneumoconiosis.'
 
 
 7
 Dr. Evans performed ventilatory and blood gas studies on December 15, 1976. The ventilatory study produced an MVV reading of 110 and an FEV1 reading of 2.60. The blood gas study resulted in an arterial pco2 reading of 41.8 and an arterial po2 reading of 78. Although Dr. Evans did not examine a chest x-ray, he diagnosed possible pneumoconiosis and chronic bronchitis aggravated by smoking.
 
 
 8
 On January 26, 1977, Dr. Combs, a B-reader, read a chest x-ray as negative for pneumoconiosis. He found that the lung fields were clear.
 
 
 9
 Dr. Wright performed ventilatory and blood gas studies on December 27, 1976. The former test yielded an MVV reading of 102 and an FEV1 reading of 2.55. Improvement was insignificant after use of bronchodilators. From these results, Wright concluded that Innis suffered from mild obstructive disease and mild restrictive disease. The blood gas tests resulted in an arterial pco2 reading of 31.8 and an arterial po2 reading of 70.7. Wright opined that these results indicated moderate hypoxemia and alkalosis.
 
 
 10
 Dr. Wright subsequently issued two reports. On February 2, 1977, Wright reported that Innis had non-specific nodulation consistent with pneumoconiosis. The diagnosis was chronic obstructive pulmonary disease, category I simple pneumoconiosis and old healed granulomatous disease. Wright concluded that Innis could not perform 'sustained heavy physical labor.' In the second report dated April 28, 1977, Wright stated that on the basis of an overall evaluation, the plaintiff was totally and permanently disabled from gainful employment.
 
 
 11
 After conducting a hearing, an ALJ concluded that the plaintiff suffers from pneumoconiosis caused by work in the nation's coal mines. The ALJ discounted the opinion of B-reader Combs on this point because Combs' opinion was contrary to all the other evidence. Although ruling that the results obtained from the ventilatory and blood gas studies did not establish disability under the regulations, the ALJ nevertheless concluded that Innis is disabled on the basis of Dr. Stumbo's testimony and Dr. Wright's reports.
 
 
 12
 The Board reversed this decision. Although the Board accepted the ALJ's finding that the plaintiff has pneumoconiosis, the Board held both that the ALJ had not found pneumoconiosis to be the primary cause of Innis' disability and that there was no medical evidence in the record to support such a finding. In reaching its decision, the Board focused upon the testimony of Dr. Stumbo and the reports of Doctors Wright and Jones.
 
 II.
 
 13
 The Board was empowered to reverse the ALJ's decision if that decision was unsupported by substantial evidence or was contrary to law. See 33 U.S.C. Sec. 921(b)(3) (Longshore and Harbor Workers' Compensation Act, as incorporated by 30 U.S.C. Sec. 932(a), a provision of the Black Lung Benefits Act); Parker v. Director, OWCP, 590 F.2d 748, 749 (8th Cir. 1979). Before considering the major question presented by this case, we first address several minor issues.
 
 
 14
 First, although the plaintiff maintained below that he had worked for ten years in the nation's coal mines, his brief on this appeal does not explain how the determination of both the ALJ and the Board that he worked in the mines for only 5-3/4 years is erroneous. Since this court found social security records to be highly probative of the number of years worked in the nation's mines, see Director, OWCP v. Congleton, 743 F.2d 428, 430 (6th Cir. 1984), we uphold the finding of 5-3/4 years service. Moreover, the plaintiff has not identified any statutory presumption to which a coal miner with only 5-3/4 years of service is entitled.
 
 
 15
 Second, the ALJ correctly ruled that none of the results obtained on the various ventilatory and blood gas studies performed in this case establish disability under the regulations. For purposes of the ventilatory studies, Innis' height is 64-1/2 inches. The results obtained on all of the ventilatory studies exceed the values set forth in the governing table. See 20 C.F.R. Sec. 410.426(b). Similarly, the results obtained on both blood gas studies exceed the values set forth in the table located at 20 C.F.R. Sec. 410, Subpart D, Appendix.
 
 
 16
 A final preliminary point is that contrary to Innis' assertion, the Board did not necessarily exceed its authority in refusing to remand this case to the ALJ on the causality issue. A causality determination is one of fact. The Board's position, however, is that since the record contains no evidence supporting the factual conclusion that pneumoconiosis is the primary cause of the plaintiff's disability, the ALJ could not have reached a different conclusion had the case been remanded. Indeed, this court has declined to remand black lung cases where a different result could not have been reached upon remand. See Congleton, 743 F.2d at 430. The central issue in this case, therefore, is whether the Board correctly held that the record contains no evidence supporting the conclusion that pneumoconiosis is the primary cause of the plaintiff's disability.
 
 
 17
 We agree with the Board that the record is devoid of such evidence. Although the plaintiff is not disabled under any of the listings already considered, the regulations provide that his pneumoconiosis must still be considered totally disabling:
 
 
 18
 If because of the severity of [the pneumoconiosis], the miner is (or was) not only unable to do his previous coal mine work, but also cannot (or could not), considering his age, his education, and work experience, engage in any other kind of comparable and gainful work (see Sec. 410.412(a)(1)) available to him in the immediate area of his residence. A miner shall be determined to be under a disability only if his pneumoconiosis is (or was) the primary reason for his inablity to engage in such comparable and gainful work. Medical impairments other than pneumoconiosis may not be considered. [Emphasis supplied.]
 
 
 19
 20 C.F.R. Sec. 410.426(a).
 
 
 20
 This case falls outside the purview of this provision because Dr. Stumbo and Dr. Wright, upon whom Innis relies, considered impairments other than pneumoconiosis in determining that Innis is disabled. Dr. Stumbo's deposition testimony expressly states that he considered conditions other than pneumoconiosis in reaching his decision. Dr. Wright's report of February 2, 1977 lists chronic obstructive pulmonary disease and old healed granulomatous disease in addition to pneumoconiosis. Nowhere does the report conclude that pneumoconiosis is the primary cause of Innis' disability. Moreover, Dr. Wright's report of April 2, 1977 states that on the basis of an overall evaluation, the plaintiff is totally and permanently disabled. In view of Dr. Wright's earlier report, this 'overall evaluation' necessarily considered the two conditions other than pneumoconiosis.
 
 
 21
 No other doctor who examined the plaintiff opined that pneumoconiosis renders him disabled. For instance, although Dr. Penman found stage I pneumoconiosis progressing to stage II, he found lung function to be unimpaired. Dr. Jones only concluded that Innis should avoid dusty environments, not that he is disabled.
 
 
 22
 Finally, the Board did not err in failing to discuss Innis' alleged vocational disabilities. Even if the plaintiff has vocational disabilities, the requirements of Sec. 410.426(a) must be satisfied. That section requires pneumoconiosis to be the primary cause of the claimant's disability. Since there is no evidence to support that conclusion, Innis' argument concerning vocational disabilities must fail.
 
 
 23
 The petition for review is DENIED.
 
 
 
 *
 The Honorable Joseph P. Kinneary, United States District Judge for the Southern District of Ohio, sitting by designation