883 F.2d 75
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nell ROBINSON, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 88-3945.
 United States Court of Appeals, Sixth Circuit.
 Aug. 17, 1989.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, DAVID D. DOWD, Jr., District Judge*.
 PER CURIAM.
 
 
 1
 Petitioner Nell Robinson (Robinson) appeals the decision of the Benefits Review Board denying her claim for widow's benefits, which were sought pursuant to the provisions of Title IV of the Federal Mine Safety and Health Act of 1969, as amended, 30 U.S.C. Sec. 901 et seq. Robinson's claim for benefits was denied based upon a determination by the administrative law judge (ALJ) that her deceased husband was not totally disabled due to pneumoconiosis at the time of his death nor died from pneumoconiosis. On appeal, Robinson asserts that the ALJ's decision, which was upheld by the Benefits Review Board, was erroneous in his determination of the length of coal mine employment and in failing to find entitlement under Section 410.414(c) based upon lay evidence. Upon reviewing the record, we conclude that the ALJ failed to provide a rational basis for his determination of the length of coal mine employment and failed to properly consider lay evidence on the issue of entitlement. Accordingly, the decision of the Benefits Review Board is reversed and the case is remanded for reconsideration in a manner consistent with this opinion.
 
 I.
 
 2
 Robinson is the widow of the miner, Charles Brewer (Brewer). Robinson and Brewer were married on December 27, 1936. Brewer died on December 27, 1940 at the age of twenty-eight. The death certificate lists pleurisy as the cause of death. Petitioner subsequently married Charlie Robinson on September 19, 1944. Mr. Robinson died on August 25, 1975. Petitioner applied for black lung benefits as an eligible surviving spouse of her first husband on January 6, 1976.
 
 
 3
 The Department of Labor initially denied Robinson's application, and she requested a formal hearing. An ALJ conducted the requested hearing and issued a Decision and Order denying Robinson's application on the grounds that she was not an eligible survivor. On appeal, the Benefits Review Board held that Mrs. Robinson was an eligible survivor, and remanded the case to the ALJ for consideration on the merits.
 
 
 4
 The evidence before the ALJ with respect to the length of Brewer's coal mine employment consisted of the testimony of Robinson, six affidavits of co-workers of the deceased miner, and a census record.
 
 
 5
 Robinson testified that Brewer told her he began working in the mines when he was fourteen, and she understood that he had never done any other kind of work until 1937, when he became too ill to work.
 
 
 6
 The affidavits of Brewer's co-workers provide information as to when those men recalled first working with him in the coal mines. Some of those affidavits place that date around 1932 or 1933,[1] while others place that date around 1926.[2]
 
 
 7
 Also before the ALJ was the census record of 1930. This census record lists Charles Brewer as a member of his brother's household in 1930 when Charles Brewer was 18 years old, and lists his occupation as "none" at that time.
 
 
 8
 The evidence before the ALJ with respect to Brewer's medical condition at the time of his death consists of a death certificate, which lists pleurisy as the cause of death, and the testimony of Robinson and co-workers. Robinson testified that her husband suffered from smothering spells, and coughed up coal dust. Further, the affidavits of two of Brewer's co-workers indicate that Brewer suffered from breathing problems.[3]
 
 
 9
 On remand, the ALJ again denied benefits. This denial of benefits was based upon a finding that Brewer was a coal miner within the meaning of the Act for five years ending in 1937, and that Brewer did not have pneumoconiosis, was not totally disabled due to pneumoconiosis at the time of his death, and pneumoconiosis did not arise out of coal mine employment.
 
 
 10
 With respect to the length of Brewer's employment in the mines, the ALJ stated that
 
 
 11
 ... Here the evidence of employment prior to 1932, while uncontradicted, is so inconclusive that I can not accept it as establishing coal mine employment before 1932.
 
 
 12
 I therefore find that the claimant has established that the deceased was a coal miner within the meaning of the Act for a period of five years ending in 1937. Joint Appendix, p. 18.
 
 
 13
 Since the ALJ did not find Robinson had established 10 years of coal mine employment for Brewer, which would entitle her to the interim presumption of 20 C.F.R. Sec. 727.203(a), the burden remained on Robinson to establish entitlement by demonstrating that her deceased husband had pneumoconiosis, was totally disabled due to pneumoconiosis at the time of his death or died due to pneumoconiosis, and that his pneumoconiosis arose out of coal mine employment. 20 C.F.R. Sec. 410.401 et seq. The ALJ found that the evidence presented by Robinson failed to establish that Brewer's illness was due to pneumoconiosis or resulted from his employment in the coal mines. Accordingly, the ALJ denied Robinson's claim for benefits.
 
 
 14
 Robinson again appealed to the Benefits Review Board. The Benefits Review Board affirmed the ALJ's decision. The Board held that it is within the discretion of the ALJ to decide the weight to be given to census records, Mr. Robinson's testimony and other affidavits, and to determine that certain of these affidavits were too vague to be given credence in determining the length of Mr. Brewer's employment in the mines. With respect to Mr. Brewer's pulmonary condition at the time of his death, the Board held that the death record constitutes probative medical evidence, and that lay testimony cannot establish a basis for entitlement to benefits.
 
 
 15
 Robinson filed a petition for review with this Court. On appeal, both Robinson and the Director of the Office of Workers' Compensation argue that the ALJ failed to provide an adequate rationale for his calculation of the length of Mr. Brewer's coal mine employment, thus rendering his decision on this issue unsupported by substantial evidence, and failed to consider whether lay testimony was by itself sufficient to support a finding of total disability due to pneumoconiosis.
 
 II.
 
 16
 The standard of review of the ALJ's decision is whether there is substantial evidence in the record to support the decision and whether the correct legal criteria was employed in reaching that decision. Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 486 (6th Cir.1985). Substantial evidence is "more than a mere scintilla" of evidence sufficient to support a conclusion which a reasonable mind might arrive at. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Even in applying this deferential standard, however, the reviewing court must examine the record as a whole and consider the evidence that detracts from, as well as supports, the disputed conclusion. Director, Office of Workers' Comp. v. Congleton, 743 F.2d 428, 430 (6th Cir.1984) (citing Universal Camera v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); Richardson v. Secretary, 735 F.2d 962, 964 (6th Cir.1984) (per curiam); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir.1978). In order for this Court to review the entire record and determine whether the ALJ's decision was supported by substantial evidence, the ALJ must clearly set forth the reasons and basis for his findings of fact, as required by the Administrative Procedures Act. 5 U.S.C. Sec. 557(c)(A)(3); Director, Office of Workers' Comp. v. Congleton, 743 F.2d at 429.
 
 
 17
 Based on the evidence described above, the ALJ concluded the affidavits offered as evidence that Brewer had worked in the mines before 1932 were too vague and inconclusive to be acceptable even though these affidavits were uncontradicted. Therefore, he found the interim presumption of 20 C.F.R. 727.203(a) to be inapplicable, and proceeded to consider the claim under 20 C.F.R. 410.401 et seq.
 
 
 18
 There are three affidavits in the record which support Robinson's testimony that Brewer began working in the mines in 1926. The 1926 date proffered in these supporting affidavits is based upon direct contact the affiants had with Brewer in the mines as a co-worker. The affidavits contain detailed information, such as corroborating reference dates and the names of the supervisors and foreman working in the mines during the relevant periods. The factual detail of these affidavits belie the ALJ's statement that the affidavits are too vague to be given credence. The affidavits of Brewer's three co-workers who began working in the mines with him around 1932 are not more detailed than the co-workers who swore they began working with him at an earlier date. Further, the affidavits involving the 1932 date do not in any way suggest that Brewer did not begin working in the mines in 1926, only that these co-workers did not have occasion to work with him before 1932.
 
 
 19
 In support of his factual determination that Brewer did not work in the mines before 1932, the ALJ merely offered the conclusory statement that the evidence in the record on the issue of when Brewer began working in the mines around 1926 was "so vague as to be unacceptable." The ALJ did not offer the reasoning behind and the basis for his conclusion that the affidavits in support of the year 1926 as the year Brewer began working in the mines were vague and inconclusive while the affidavits which speak to the 1932 year were worthy of greater credence.
 
 
 20
 Having made the determination that Brewer was a coal miner within the meaning of the Act for a period of five years ending in 1937, the ALJ necessarily found the interim presumption of 20 C.F.R. 727.203(a) to be inapplicable, and proceeded to consider the claim under 20 C.F.R. 410.401 et seq. On appeal, both Robinson and the Director argue that the ALJ and the Board erred as a matter of law in failing to consider lay evidence that the deceased miner suffered from pneumoconiosis.
 
 
 21
 30 U.S.C. Sec. 923(b), provides that when a miner is deceased and there is no medical or other relevant evidence on the issue of whether the miner was either totally disabled due to pneumoconiosis or that his death was caused by pneumoconiosis, "appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials" shall be considered in determining the validity of claims. Further,
 
 
 22
 [w]here there is no medical or other relevant evidence in the case of a deceased miner, such affidavits, from persons not eligible for benefits ... shall be considered to be sufficient to establish that the miner was totally disabled due to pneumoconiosis or that his or her death was due to pneumoconiosis.
 
 
 23
 Id. See also, 20 C.F.R. 410.414(c); Rapier v. Secretary, Health and Human Services, 808 F.2d 456, 459 (6th Cir.1986).
 
 
 24
 Besides the contents of Brewer's death certificate, there is no medical evidence in this case that goes to the issue of total disability or death due to pneumoconiosis. There is, however, the testimony of Robinson regarding Brewer's medical condition. She testified that her husband would smother and cough up black material, and that he was short of breath and was weak and could not eat or sleep. Also in the record are the affidavits of two of Brewer's co-workers, who testified that Brewer experienced difficulty breathing. The ALJ reached the conclusion that there was nothing in the record by which he could find that Brewer's illness was due to pneumoconiosis or resulted from his coal mine employment. However, the ALJ reached this conclusion without stating the reason or basis for his determination that the testimony offered by Robinson and Brewer's co-workers did not establish that Brewer's illness was due to pneumoconiosis from work in the coal mines. Because of the ALJ's failure to state the reason and basis for his conclusion that Brewer was not totally disabled due to pneumoconiosis at the time of his death or that his death was due to pneumoconiosis, this Court cannot determine whether he properly considered the lay evidence in record on these issues and whether that conclusion is supported by substantial evidence.
 
 
 25
 The failure of the ALJ to clearly provide a rational basis for his factual determinations with respect to the length of Brewer's coal mine employment constitutes reversible error. If upon reconsideration of the affidavits and other evidence in the record on the issue of the length of Brewer's coal mine employment, the ALJ should find he was employed in the coal mines for ten years, the ALJ must go on to consider whether the lay evidence in the record satisfies the requirement of 20 C.F.R. Sec. 727.203(a)(5). If upon reconsideration of the affidavits and other evidence in the record on the issue of the length of Brewer's coal mine employment, the ALJ should again find the length of Brewer's coal mine employment was less than ten years, then the ALJ must go on to consider whether the lay evidence in the record establishes that he was totally disabled due to pneumoconiosis at the time of his death pursuant to 20 C.F.R. Sec. 410.414(c). All factual conclusions reached by the ALJ with respect to the length of Brewer's coal mine employment and the effect of lay evidence upon a determination of entitlement must be supported by the reasons and basis for reaching that determination. Accordingly, this case is reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation
 
 
 [1]
 Willie Mayne testified by affidavit that he first worked with Brewer in the Fayette Coal Company's mines in 1933. Clyde Bryan worked with Brewer in the mines from 1932 through 1936. Steely Mayne first worked in the mines with Brewer in 1932
 
 
 [2]
 Hubert Mayne's affidavit provided that Brewer had worked in the mines since 1926 or 1927, and that he had never known Brewer to do anything but mining. Robert Fuston swore in an affidavit that Brewer started working in the mines about 1926, or possibly a year or two earlier. Marion Anderson's affidavit does not directly articulate a year in which he remembers first working with Brewer in the mines, but if one performs a calculation based upon the information Mr. Anderson supplies, Brewer began working in the mines at least as early as 1926. The 1926 start date is consistent with Robinson's testimony that Brewer had begun in the mines when he was fourteen years old
 
 
 [3]
 The two co-workers who testified through their affidavits to Brewer's breathing difficulties were Marion Anderson and Raymond Fuston