883 F.2d 74
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BETHLEHEM STEEL CORPORATION, Petitioner,
v.
Mary LOONEY, Widow of Ellis Looney; and Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 88-3773.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1989.
 
 Before RALPH B. GUY Jr., and RYAN, Circuit Judges DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Bethlehem Steel Corporation (Bethlehem) appeals from the granting of black lung benefits by the Benefits Review Board (Board), United States Department of Labor, to claimant Mary Looney, widow of coal miner Ellis Looney. The claim for benefits was filed pursuant to the provisions of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. Sec. 901, et seq. On appeal, Bethlehem asserts that the administrative law judge (ALJ), whose decision was upheld by the Board, erred in finding that Bethlehem had insufficient evidence to rebut the presumption that claimant was entitled to benefits. Upon a review of the record, we conclude that the ALJ's finding of no rebuttal under section 727.203(b) is supported by substantial evidence, and therefore, the decision of the Board is affirmed.
 
 I.
 
 2
 The miner, Ellis Looney (decedent), died on June 2, 1978, at the age of fifty-seven. He had worked in the coal mines for thirty-five years, and the last twenty-one of those years he had been employed by Bethlehem. Claimant, who had been married to Ellis Looney since 1936, filed for benefits in August 1979. The application was initially granted, but upon Bethlehem's request, a hearing was held before an ALJ.
 
 
 3
 The ALJ found that because decedent had over ten years of coal mine employment and the claim was filed prior to the effective date of 20 C.F.R. Part 718 establishing permanent medical criteria, claimant was entitled to the interim presumptions in 20 C.F.R. Sec. 727.203. These rebuttable presumptions state that decedent was totally disabled due to pneumoconiosis arising from his coal mine employment, or that his death was due to pneumoconiosis, if claimant met any one of the criteria in section 727.203(a)(1)-(4). These criteria include (1) x-rays which establish the existence of pneumoconiosis, (2) ventilatory tests which indicate the presence of a chronic respiratory or pulmonary disease, (3) blood gas studies which demonstrate the presence of an oxygen transfer impairment, or (4) medical opinion evidence which establishes the presence of a totally disabling respiratory or pulmonary impairment.
 
 
 4
 The ALJ considered x-ray evidence which encompassed sixteen readings of ten x-ray films. The ALJ noted that only three readings were positive for pneumoconiosis, and two of these positive readings were in 1971. Since decedent had many later x-rays which were negative for pneumoconiosis, the ALJ afforded little weight to these two positive readings. The other positive reading was of an x-ray taken in 1977, and was read by a total of four physicians, three of whom were B-readers.[1] Only one of the B-readers read the x-ray as positive for pneumoconiosis. The ALJ concluded that claimant could not invoke the presumption under section 727.203(a)(1).
 
 
 5
 Under section 727.203(a)(2), the ALJ found that the three pulmonary function test results which were included in the record were not accompanied by spirometric tracings and, therefore, these tests were "non-conforming" and could not be used to invoke the presumption. 20 C.F.R. Sec. 727.206(a); see also 20 C.F.R. Sec. 410.430. However, the record did contain the results of two qualifying arterial blood gas studies which indicated an oxygen transfer impairment. The ALJ held that the claimant had therefore invoked the presumption of entitlement under section 727.203(a)(3).
 
 
 6
 The ALJ next examined the medical opinion evidence under subsection (a)(4), noting that most of this evidence addressed decedent's heart condition, and not his pneumoconiosis. The ALJ considered this evidence more relevant to rebuttal. However, there was a medical report from Dr. Rodney Dick, based on an examination of decedent in 1971. Dr. Dick diagnosed simple pneumoconiosis, fatigability with an undetermined etiology, and a possible peptic ulcer or hiatal hernia. The ALJ concluded that this report did not establish a totally disabling respiratory impairment, and consequently was not sufficient to invoke the presumption under subsection (a)(4).
 
 
 7
 In a survivor's claim, once the interim presumption has been invoked, the claimant is entitled to both presumptions--total disability due to pneumoconiosis at the time of death arising out of coal mine employment, and death due to pneumoconiosis arising out of coal mine employment. In order to successfully establish rebuttal, the employer must rebut both of these presumptions. See Conners v. Director, OWCP, 7 B.L.R. 1-482 (1984); Napier v. Bethlehem Steel Corp., 5 B.L.R. 1-1 (1982).
 
 
 8
 Bethlehem therefore attempted to establish rebuttal under section 727.203(b). Under this subsection, the presumptions can be rebutted by showing that:
 
 
 9
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ... or
 
 
 10
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ... or
 
 
 11
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 12
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 13
 The record contains several hospital and physician reports detailing decedent's medical problems in the year preceding his death. As noted above, section 727.203(b)(3) allows rebuttal of the presumption that the deceased miner died from pneumoconiosis by establishing that the miner's death did not arise from coal mine employment. Bethlehem used these medical reports from the last year of decedent's life in its efforts to rebut the presumption of death from pneumoconiosis.
 
 
 14
 Decedent was first admitted to the Jenkins Clinic Hospital on April 28, 1977, complaining of chest pains. His diagnosis upon discharge was arteriosclerotic heart disease with anginal syndrome. Decedent was out of the hospital for only two days, and was readmitted with similar complaints. On May 6, 1977, he was admitted to the coronary care unit in Appalachian Regional Hospital. On May 15, 1977, decedent was discharged with diagnoses of arteriosclerotic cardiovascular disease with unstable angina which was stabilized at discharge, probable mild emphysema, probable peptic ulcer, and an elevated fasting blood sugar. Decedent was readmitted the following day, again with chest pains radiating to his back and arms, with weakness and diaphoresis. On May 22, decedent was transferred to Roanoke Memorial Hospital, where he was treated by Dr. Tholpady and given diagnoses of arteriosclerotic cardiovascular disease with unstable angina and probable mild emphysema. Decedent was also examined by Dr. Bendall while at Roanoke, and Dr. Bendall diagnosed arteriosclerotic heart disease, probably associated with angina, and chronic obstructive lung disease which was secondary to smoking.
 
 
 15
 Subsequent to these hospitalizations, decedent was treated by Dr. Hollingsworth. The record contains notes from office visits on July 8, 1977, November 11, 1977, and May 2, 1978. The ALJ noted that these visits only concerned decedent's heart condition, and that the final diagnosis was coronary artery disease. Decedent was dead on arrival at Jenkins Clinic Hospital on June 2, 1978. The cause of death was listed as active coronary thrombosis due to arteriosclerotic heart disease.
 
 
 16
 The ALJ concluded that Bethlehem had successfully rebutted the presumption that decedent had died from pneumoconiosis arising out of coal mine employment. However, the ALJ found that Bethlehem had not rebutted the presumption that the decedent was disabled due to pneumoconiosis at the time of his death and, therefore, claimant was entitled to benefits. The Benefits Review Board agreed, and Bethlehem appeals.
 
 II.
 
 17
 Bethlehem asserts on appeal that the ALJ's determination that Bethlehem failed to rebut the presumption under section 727.203(b)(3) and (b)(4) is not supported by substantial evidence.[2] Specifically, Bethlehem argues that the decedent's hospital and treatment records from 1977 and 1978 establish that decedent did not have, nor was he disabled by, pneumoconiosis.
 
 
 18
 The findings of an ALJ in a black lung case may not be set aside if they are "based on substantial evidence viewing the record as a whole, even if we would have taken a different view of the evidence were we the trier of facts." Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 486 (6th Cir.1985); (citing Moore v. Califano, 633 F.2d 727, 729 (6th Cir.1980)). Substantial evidence is "more than a mere scintilla"; substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 19
 Under the provisions for rebuttal, the burden of proof was on Bethlehem to establish, by a preponderance of the evidence, that pneumoconiosis was not a contributing cause of decedent's disability. The ALJ found that the medical evidence from 1977 and 1978 described decedent's heart condition and did not address his pneumoconiosis. The ALJ noted that even if the evidence established that decedent was totally disabled due to his heart condition, which the evidence did not establish, claimant would not be precluded from receiving benefits if decedent was also disabled due to pneumoconiosis. The issue of awarding black lung benefits when the miner has more than one potentially disabling condition was addressed in Gibas v. Saginaw Mining Co., 748 F.2d 1112 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985). This court stated in Gibas:
 
 
 20
 [S]ection 727.203(b)(3) does not permit the award of benefits for partial disability; it merely grants an employer the chance to prove that a miner's disability did not arise, in whole or in part, from his coal mine employment. If an employer is able to prove that pneumoconiosis played no part in causing a miner's disability, then the employer has satisfied the requirements of Sec. 727.203(b)(3). Where, however, pneumoconiosis is a contributing cause to a miner's total disability, he is conclusively entitled to benefits.
 
 
 21
 748 F.2d at 1120 (citations omitted).
 
 
 22
 Here claimant had invoked the presumption of total disability due to pneumoconiosis, and the burden had shifted to Bethlehem for rebuttal. The presumption of entitlement to black lung benefits cannot be rebutted merely by demonstrating the existence of another potentially disabling condition. This court has carefully considered and rejected the argument that (b)(3) rebuttal requires only a showing that the miner was not disabled wholly by pneumoconiosis. See Roberts v. Benefits Review Board, 822 F.2d 636 (6th Cir.1987), and Ramey, 755 F.2d at 490-92. In Roberts, this court stated:
 
 
 23
 [t]he presumption of entitlement serves the useful purpose of avoiding the necessity of requiring disabled coal miners to undertake the impossible task of allocating blame and attributing the true cause of a total disability to pneumoconiosis when they may be suffering from other ailments as well.
 
 
 24
 822 F.2d at 639.
 
 
 25
 Therefore, an employer is required to prove that pneumoconiosis was not a contributing factor in causing a miner's disability. Here the ALJ considered the medical evidence, in particular the report from Dr. Dick, diagnosing pneumoconiosis and the three positive chest x-rays. Bethlehem argues that the medical reports from 1977 and 1978 should be sufficient to establish that pneumoconiosis played no part in the miner's disability. The ALJ and the Board, however, correctly noted that these reports are insufficient to establish rebuttal because they address the miner's treatment for his heart condition and are silent as to the issue of whether pneumoconiosis contributed to the miner's disability.
 
 
 26
 Bethlehem asserts that this case is analogous to Director, Office of Workers' Compensation Programs v. Congleton, 743 F.2d 428 (6th Cir.1984), a case in which we did find the Director had successfully rebutted the presumption of pneumoconiosis. In Congleton, we explained that:
 
 
 27
 Today's decision merely enunciates the simple and elementary premise that when the Director effectively proves an absolute absence of chronic lung disease in any of the medical records available regarding the deceased, especially where, as here, the miner's own physicians closely monitored his health for a number of years before his death, the Director has rebutted the presumption of disability due to pneumoconiosis as a matter of law.
 
 
 28
 Id. at 431 (emphasis added). In the case before us, there is not an "absolute absence" of medical evidence indicating that claimant had pneumoconiosis. There is the aforementioned report from Dr. Dick, the positive chest x-rays, plus the several hospital and physician reports from 1977 and 1978 which refer to claimant having chronic obstructive lung disease.
 
 
 29
 This is also not the type of case where the miner was thoroughly evaluated as to the degree of his pneumoconiosis. See Moseley v. Peabody Coal Co., 769 F.2d 357 (6th Cir.1985). In Moseley, cited to by Bethlehem, the miner was evaluated by three pulmonary disease specialists, and each one found no evidence that the miner had pneumoconiosis. Using the available evidence, Bethlehem had the burden of proving that the miner was not disabled, in whole or in part, by pneumoconiosis. Upon review, we conclude that there is substantial evidence for the ALJ's determination that Bethlehem did not successfully rebut, under section 727.203(b)(3), the claimant's presumption of entitlement to benefits.
 
 
 30
 Finally, Bethlehem asserts that it established rebuttal under section 727.203(b)(4) by demonstrating that decedent did not have pneumoconiosis. Here we also conclude that there is substantial evidence for the ALJ's finding of no rebuttal under this subsection. The ALJ based his decision on Dr. Dick's report, and on the fact that the record contained some positive x-ray evidence. Therefore, Bethlehem could not demonstrate that decedent did not have pneumoconiosis.
 
 
 31
 AFFIRMED.
 
 
 32
 RALPH B. GUY, Jr., Circuit Judge, dissenting.
 
 
 33
 Based on a review of the evidence that was before the ALJ, I am unable to conclude that the ALJ's determination that Bethlehem did not establish rebuttal under subsection (b)(3) is supported by substantial evidence, and I would reverse the award of benefits in this case.
 
 
 34
 Decedent retired from coal mine work in October 1977. His widow, claimant, testified that decedent had a cough and a wheeze for three years prior to his death. Decedent took cough syrup for this problem, and although he stated to her that he should quit work because of his breathing problems, he continued to work until his retirement. He also smoked cigarettes for at least thirty-eight years. Dr. Dick's examination in 1971 notes a clear chest on examination, and a diagnosis of simple pneumoconiosis.[1] Claimant then continued to work for six more years. See Usery v. Turner Elkhorn Mining Co., 418 U.S. 1, 7 (1976) (simple pneumoconiosis seldom productive of significant respiratory impairment).
 
 
 35
 Although the ALJ notes that the reports from the year prior to decedent's death address his heart condition, these reports also repeatedly diagnosed "mild emphysema." Dr. Bendall's discharge summary of decedent's condition while at Roanoke Memorial Hospital notes a diagnosis of chronic obstructive lung disease, secondary to smoking. The report also notes a forty-five year smoking history prior to May 7, 1977, and a normal chest x-ray at this time. Although decedent was being treated for heart problems, his lungs were also examined and a respiratory diagnosis noted. In addition, Dr. Hollingsworth's office notes from July 8, 1977, indicate that decedent and Dr. Hollingsworth believed that decedent could return to work in the mines. The notes from October 11, 1977, indicate that decedent attempted to return to work, but was unable to do the work due to chest pain, so decedent sought retirement. (App.56). Dr. Hollingsworth also noted on that date that decedent was unable to do "heavy mine work," but "might be able to do a lighter form of work." (App.57). Although none of these factors in isolation establish rebuttal, taken as a whole, I would conclude that Bethlehem has successfully shown that pneumoconiosis did not contribute to decedent's disability. See Begley v. Consolidation Coal Co., 826 F.2d 1512, 1517-18 (6th Cir.1987).
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation
 
 
 [1]
 "B" readers are radiologists who have successfully completed an examination demonstrating their proficiency in assessing pneumoconiosis by x-ray. See Hatfield v. Secretary of Health and Human Services, 743 F.2d 1150, 1154 n. 3 (6th Cir.1984)
 
 
 [2]
 The ALJ also found no rebuttal under subsections (b)(1) and (b)(2), but Bethlehem has not contested these findings on appeal
 
 
 [1]
 Dr. Dick notes in his report that decedent stated that he was told that he had simple pneumoconiosis on the basis of a chest x-ray several months prior. (App.88). As of the date of Dr. Dick's report and, hence, his diagnosis of simple pneumoconiosis, Dr. Dick had not yet taken decedent's chest x-ray. Dr. Dick writes in this report that his plan is to obtain decedent's chest x-ray. (App.89)