# UNITED STATES STEEL CORPORATION, Petitioner,

### v.

## Josephine ORAVETZ (Widow of Michael Oravetz) and Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Respondents.

### No. 82–3014.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 30, 1982.

Decided Aug. 16, 1982.

*Sourcebook, supra,* at 694.

James D. Strader, Pittsburgh, Pa., for petitioner.

T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Asst. Counsel for Black Lung Benefits, Virginia C. Smith, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before GIBBONS and HUNTER, Circuit Judges, and POLLAK,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

United States Steel Corporation (U.S.S.) petitions pursuant to 30 U.S.C. § 932(a) for review of an order of the Benefits Review Board granting payments of black lung benefits to Mrs. Josephine Oravetz, widow of Michael Oravetz, pursuant to Title IV of the Federal Coal Mine, Health and Safety Act, 30 U.S.C. § 901 et seq. (1976).

U.S.S. makes two contentions: first, that the Benefits Review Board (BRB) erred in concluding that substantial evidence supported the administrative law judge's finding that Josephine Oravetz was entitled to black lung benefits; second, that the presumption of entitlement to black lung benefits in section 411(c)(5), 30 U.S.C. § 921(c)(5), violates the due process clause of the fifth amendment. We conclude that the administrative law judge's finding is supported by substantial evidence, and that the presumption in section 411(c)(5) is constitutional.

I. *Evidentiary Support for the Finding of Disability*

Michael Oravetz, a coal miner, died of heart failure on December 22, 1975 after working in United States Steel's coal mines for over thirty-four years. On January 2, 1976, his widow filed a claim for black lung benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. Section 411(c)(5) of the Act, 30 U.S.C. 921(c)(5), provides in relevant part, that

In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate

applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis.

The adjudicatory rules[1] for section 411 (c)(5) provide that "[i]n order to rebut this presumption the evidence must demonstrate that the miner's ability to perform his or her usual and customary work ... was not reduced at the time of his or her death...." 20 C.F.R. 727.204 (1979).

A deputy commissioner of the Office of Workers' Compensation Programs, U. S. Department of Labor, pursuant to section 422(a), 30 U.S.C. § 932(a), determined that Josephine Oravetz was entitled to benefits. After U.S.S. controverted the claim, a formal hearing was held before an administrative law judge (ALJ). In July 1980, the ALJ found that the presumption at section 411(c)(5) of the Act had been invoked, and that U.S.S. had failed to rebut the presumption by establishing that Michael Oravetz was not partially or totally disabled by pneumoconiosis at the time of his death. U.S.S. appealed to the BRB which, in November 1981, affirmed the ALJ's award of benefits on the ground that the order was supported by substantial evidence and in accordance with law. This petition for review followed.

In reviewing an award of benefits by the BRB, the court of appeals must view the record as a whole and decide whether there is substantial evidence to support the ALJ's findings. 33 U.S.C. § 921(b)(3). *See also Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172–73 (3d Cir. 1981); *Sun Shipbuilding and Dry Dock Co. v. McCabe*, 593 F.2d 234, 237 (3d Cir. 1979).

It is uncontroverted that Josephine Oravetz established the facts necessary to invoke the presumption of entitlement for survivors contained in section 411(c)(5), for

---

* Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The interim criteria for determining eligibility of surviving dependents applicable to claims filed prior to March 31, 1981, the effective date of the final rules, are found in 20 C.F.R. § 727.200 et seq. (1979). These interim rules applied to Mrs. Oravetz' claim because it was filed prior to the effective date of the final rules.

Michael Oravetz died before March 1, 1978 and was employed for more than twenty-five years in the coal mines prior to June 30, 1971. Our review, therefore, must focus on the substantiality of the evidence for the finding that U.S.S. did not rebut the statutory presumption.

U.S.S. contends it established that the miner was not partially disabled due to black lung at the time of his death by introducing a deposition of its medical expert, Dr. Rodman, and by establishing both that Mr. Oravetz was working at the mine on the day he died, and that his wages had not been reduced prior to that day. Dr. Rodman's report stated that Mr. Oravetz' black lung had no role in his death, and would not have caused disability in his lifetime.

A review of the record discloses, however, that the ALJ had conflicting medical evidence before him. The report of Dr. Ayres, a pathologist who performed an autopsy, found that the deceased suffered from severe coal worker's pneumoconiosis. While Dr. Ayres listed calcific aortic stenosis, cardiac hypertrophy and cardiac arrest as the first three causes of death, severe coal miners' pneumoconiosis was listed as the fourth and cor pulmonale as the fifth cause of death. The claimant argued that the fact that Mr. Oravetz had cor pulmonale, which is an enlargement of the heart due to lung involvement, established a causal relationship between the black lung and the heart attack.

Mrs. Oravetz testified that although Mr. Oravetz worked until the day he died, he did so only to push himself one more year to reach age 62 in order to become eligible for social security. There was further evidence that Mr. Oravetz had on many occasions told his wife that because of his heart and lung problems he could not have done his job without the day-to-day help he received from his fellow workers. Mrs. Oravetz also testified that her husband complained about pains in his chest all the time; that he was often so tired upon return from work that he refused food; that his choking kept him from sleeping at night; that he was short of breath to the extent that he could not walk up a slight grade in their garden without resting and in fact because of these problems, he had not been able to make his garden for several years.

▮ The ALJ correctly noted that the regulations do not limit evidence in support of survivor claims to medical evidence. "Eligible survivors shall ... furnish such evidence as is available with respect to the health of the miner at the time of death...." 20 C.F.R. § 727.204(a) (1979). The ALJ credited Mrs. Oravetz' and Dr. Ayres' testimony regarding Mr. Oravetz' disability, and discredited Dr. Rodman's deposition. The ALJ stated, "I am not persuaded by Dr. Rodman's deposition that decedent's pneumoconiosis did not cause his disability." As is often the case, each side presented medical testimony in support of its position. It is the duty of an administrative law judge to resolve such a conflict by crediting one side's testimony and rejecting the others. *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170 (3d Cir. 1981). Choosing to give more weight to the testimony of Dr. Ayres, in light of the fact that he was the physician who performed the autopsy, rather than that of Dr. Rodman, who reinterpreted the autopsy based on slides sent to him, was not unreasonable. *McLaughlin v. Jones & Laughlin Steel Corp.*, 9 Ben.Rev.Bd.Serv. (MB) 1007, 1013 (Jan. 31, 1979).

U.S.S. also contends that the presumption was rebutted by the facts that Michael Oravetz was working at the coal mine at the time of his death and that his earnings at that time had not been reduced. The interim criteria provide that:

(d) *The following evidence alone shall not be sufficient to rebut the presumption*:

(1) Evidence that a deceased miner was employed in a coal mine at the time of death;

(2) Evidence pertaining to a deceased miner's level of earnings prior to death;

(3) A chest X-ray interpreted as negative for the existence of pneumoconiosis;

(4) A death certificate which makes no mention of pneumoconiosis.

20 C.F.R. 727.204(d) (1979) (emphasis added).

█ The permanent criteria amended section 727.204(d) to read: "None of the following items, by itself, shall be sufficient to rebut the presumption." 20 C.F.R. 727.-204(d) (1980). However, the permanent criteria do not control this case since the claim was filed prior to the effective date of the final rules. To the extent appropriate, however, the final rules should be construed together in the adjudication of all claims. *See* 45 Fed.Reg. 13679 (1980). Although U.S.S. urges that the amendment to section 727.204(d) should be construed to mean that upon establishment of two or more of these facts, the presumption has been rebutted, the Department of Labor's explanation for the change provides a contrary interpretation. The Department stated that "[t]his change is not intended to suggest that the submission of more than one of the items listed necessarily rebuts the presumption." 45 Fed.Reg. 13693 (1980).

█ It was U.S.S.'s burden to demonstrate that Michael Oravetz' ability to perform his customary work was not reduced at the time of his death. The only evidence introduced to meet this burden was Dr. Rodman's testimony and the two facts which established that Oravetz died at the mine and had not had his earnings reduced prior to that time.

The ALJ was authorized to reject Dr. Rodman's report, and the establishment of the two facts does not necessarily rebut the presumption. In light of Dr. Ayres' findings and the testimony of Mrs. Oravetz, we hold that there is substantial evidence in the record as a whole to support the finding by the ALJ that Mrs. Oravetz is entitled to benefits.

II. *Constitutionality of the Rebuttable Presumption*

█ We turn, therefore, to U.S.S.'s second claim that the rebuttable presumption contained in section 411(c)(5), 30 U.S.C. § 921(c)(5), is unconstitutional under the due process clause of the fifth amendment. U.S.S. claims that there is no rational connection between the facts necessary to invoke the presumption, the death of a miner prior to March 1, 1978 who had twenty-five years employment in the coal mines prior to June 30, 1971, and the ultimate fact presumed, that the miner was either partially or totally disabled at the time of his or her death, and therefore, that the statute's chronological eligibility limitations are arbitrary. We disagree.

The standard for judging the validity of such presumptions is set forth in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The Court there sustained the constitutionality of the presumptions contained in section 411(c)(1)–411(c)(4) of the Act, 30 U.S.C. § 921(c)(1)–(c)(4),[2] holding that presumptions arising in civil statutes involving matters of economic regulation are valid under the due process clause so long as "there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate." 428 U.S. at 28, 96 S.Ct. at 2898 (quoting *Mobile, J. & K.C.R. Co. v. Turnip-*

---

**2.** Section 411(c)(1) provides that if a miner who suffers from pneumoconiosis was employed for 10 or more years in a coal mine or mines, it shall be rebuttably presumed that his pneumoconiosis arose out of his employment. Section 411(c)(2) provides that if a miner was employed for 10 or more years in a coal mine or mines and died from a respirable disease, it shall be rebuttably presumed that his death was due to pneumoconiosis. Under section 411(c)(3), a miner who is clinically shown to have the particularly severe complicated form of pneumoconiosis is irrebuttably presumed to be totally disabled as a result of pneumoconio-

sis or to have died as a result of or while disabled by pneumoconiosis. Section 411(c)(4) provides that, in the case of a miner who has worked 15 or more years in an underground coal mine and whose chest roentgenogram (X-ray) is interpreted as negative for complicated pneumoconiosis, if other evidence demonstrates the existence of a totally disabling respiratory impairment, it shall be rebuttably presumed that the miner is totally disabled as a result of pneumoconiosis or has died as a result of or while disabled by pneumoconiosis. 30 U.S.C. § 921(c).

seed, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910)). The legislative history of section 411(c)(5) establishes that Congress had ample evidence before it from which it could rationally conclude that those who have worked for twenty-five years in coal mines prior to June 30, 1971, the date imposition of federal dust standards became fully effective, can be presumed to be partially or totally disabled from pneumoconiosis.

One of the primary purposes of the Black Lung Benefits Reform Act was to establish objective criteria for determining benefit entitlement. H.R.Rep.No. 151, 95th Cong., 2d Sess. 1, reprinted in 1978 U.S. Code Cong. & Ad.News 237. The House Report noted that data tabulated through 1974 indicated that claimants in 80.89 percent of the cases involving miners who had been working in the mines for thirty years or more had been determined to be eligible for benefits. Id. at 241. At the same time there was great concern over inequities in eligibility determinations.

> [M]any seemingly allowable claims involving miners with extended coal mining work experiences were curiously being denied. The justifications given in individual cases more often turned on disputed or unavailable medical evidence . . . In recognition of the historically demonstrated and exceedingly high probability of total disability (80.89 percent), and out of concern for an equally probable risk of error in the remaining cases, an objective test was established. . . .

Id. Medical expert testimony supported the establishment of a statutory presumption of partial or total disability based on numbers of years worked in the mines. Medical experts recognized that after about twenty-five years the majority of coal miners show at least partial disability. Id. at 242. Congress was also made aware of the difficulty in establishing meaningful and objective individualized tests for ascertaining disability. Id.

While contrary evidence was heard which disputed the causal relationship recognized

in section 411(c)(5), see id. at 285, Congress chose instead to enact the presumption. By doing so, Congress recognized the difficulties involved in diagnosing respiratory impairments due to coal mine employment and the problems inherent in proving survivors' claims. Congress acted rationally by enacting the rebuttable presumption contained in section 411(c)(5). Therefore it does not violate due process.

### III. *Conclusion*

The petition for review will be denied and the order of the BRB will be affirmed in all respects.