**NORTH AMERICAN COAL CORPORATION,**
**Petitioner,**

v.

**Ida CAMPBELL (Widow of Lawrence Campbell); Director, Office of Workers' Compensation Programs, United States Department of Labor; Benefits Review Board, Respondents.**

No. 83–3553.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 3, 1984.
Decided Nov. 27, 1984.

David J. Millstone (argued), Maria J. Codinach, Squire, Sanders & Dempsey, Cleveland, Ohio, for petitioner.

Jeffrey J. Bernstein (argued), J. Michael O'Neill, U.S. Dept. of Labor, Washington, D.C., Jennifer Sargus (argued), Schrader, Stamp, Byrd, Byrum, Johnson & Companion, Wheeling, W.Va., for respondents.

* Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky and United States District Judge for the Western District of Kentucky, sitting by designation.

1. Section 921(c)(5) reads, in part, as follows:

Before EDWARDS and MARTIN, Circuit Judges, and SILER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

North American Coal Corporation appeals the award of black lung survivor's benefits to Ida Campbell, widow of Lawrence Campbell, a former North American coal-mining employee. The company makes three arguments: (1) that the administrative law judge's finding that Lawrence Campbell was partially disabled by pneumoconiosis is not supported by substantial evidence; (2) that the statutory provision entitling Ida Campbell to benefits, 30 U.S.C. § 921(c)(5), is unconstitutional; and (3) that any benefits owed to Ida Campbell must be paid by the Black Lung Benefits Trust Fund and not by North American.

Lawrence Campbell worked thirty-four years as an underground coal miner for North American Coal. On June 10, 1974, at the age of sixty, he was crushed to death in a mining accident. An autopsy revealed that he was suffering from simple pneumoconiosis at the time of his death. Campbell's widow, Ida, filed for survivor's benefits on August 5, 1974. Her claim was initially denied. However, after passage of the Black Lung Benefits Reform Act of 1977, the Secretary of Labor reviewed her claim under the new standards and decided to award benefits. The Secretary also determined that North American was responsible for paying those benefits. North American objected and requested a hearing before the administrative law judge. The administrative law judge upheld the Secretary's decision on July 8, 1980, ruling that Mr. Campbell was entitled to benefits under the twenty-five-year presumption of 30 U.S.C. § 921(c)(5).[1] The Benefits Review

In the case of a miner who dies on or before March 1, 1978, who was employed for twenty-five years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner

Board upheld the administrative law judge's decision on June 10, 1983.

North American's first contention on appeal is that the administrative law judge's finding of disability is not supported by substantial evidence. *See Moore v. Califano*, 633 F.2d 727, 729 (6th Cir.1980) (administrative law judge's finding must be upheld if supported by substantial evidence.) All parties agree that Ida Campbell was entitled to the benefit of the section 921(c)(5) presumption. Her husband worked twenty-five years in the mines prior to June 30, 1971, and he died prior to March 1, 1978. However, North American claims to have rebutted the presumption of entitlement by establishing that Lawrence Campbell was neither partially nor totally disabled due to pneumoconiosis at the time of his death. The company points to testimony by Campbell's foreman that Campbell rarely missed a day of work and never complained of difficulties performing his job as a coal-car motorman. The company also notes that only two months prior to his death, Campbell visited his doctor for a check-up and made no mention of any respiratory problems or symptoms, nor were any diagnosed. Finally the company relies on the testimony of its medical expert that, based on a review of autopsy findings and Campbell's medical and employment histories, Campbell was neither partially nor totally disabled by pneumoconiosis.

 However, there was other evidence in the record to support a finding of partial disability. One of Campbell's co-workers testified that Campbell had breathing difficulties while climbing a 980-foot slope out of the mine at the end of each day's work. He would stop periodically to catch his breath and sometimes "get red as a beet." Despite North American's protestations to the contrary, this daily climb out of the mine was a part of Campbell's usual work, a part that was clearly difficult to perform. Moreover, there was testimony by Campbell's wife which, if believed, would establish that Campbell experienced exertional problems at home in his later

years that were bound to affect his ability to perform on the job. According to Ida Campbell, in his later years her husband could no longer help her with the household chores, mow the lawn, tend his large garden, or walk the half-mile to his favorite fishing spot. He was reduced to sleeping on the couch at night with his back propped up in order to breathe easier. The administrative law judge found that Campbell's exertional limitations reduced his ability to perform the "strenuous activities ... required of a motorman on a recurring basis." While we might have decided this case otherwise, our task is not to weigh the evidence but rather to determine if it is sufficient to sustain a benefits award. We believe that it is.

North American next attacks on several grounds the constitutionality of the presumption upon which Ida Campbell relied to receive benefits. First the company claims section 921(c)(5) is unconstitutional under the due process clause of the fifth amendment because "there is no rational connection between the fact proven [time in the mines] and the ultimate fact presumed [black lung disability]." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 28, 96 S.Ct. 2882, 2898, 49 L.Ed.2d 752 (1976) (quoting *Mobile, Jackson & Kansas City Railroad Co. v. Turnipseed*, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910)). In *Turner Elkhorn*, the Supreme Court was faced with a challenge to the validity of two other section 921(c) presumptions, namely that a coal miner with ten years' employment in the mines who suffers from pneumoconiosis is presumed to have contracted the disease from mining, 30 U.S.C. § 921(c)(1), and that if a coal miner with at least ten year's employment in the mines dies of a respiratory disease, he will be presumed to have died of black lung. 30 U.S.C. § 921(c)(2). In upholding the validity of these presumptions, the Court stressed the deference which is to be given to the Congress in these matters. "The process of making the determination of raitonality is, by its nature, highly empirical,

was not partially or totally disabled due to pneumoconiosis.

and in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it." *Id.* at 28, 96 S.Ct. at 2898 (quoting *United States v. Gainey*, 380 U.S. 63, 67, 85 S.Ct. 754, 757, 13 L.Ed.2d 658 (1965)).

■ Here, North American correctly points out that the Congress heard much testimony to the effect that there is no clear causal connection between duration of employment and incidence of *total* disability due to pneumoconiosis. *See, e.g.,* S.Rep. No. 209, 95th Cong., 1st Sess. 17 (1977); H.Rep. No. 151, 95th Cong., 2d Sess. 81–82, *reprinted in* 1978 U.S. Code Cong. & Ad. News 237, 293–95. However, the statutory provision at issue here, unlike all other provisions in the Black Lung Benefits Act, allows recovery for either total or *partial* disability due to pneumoconiosis. And the Congress did have before it significant evidence of a connection between years of service and partial disability. For example, an autopsy study of 400 deceased miners showed that ninety percent with over twenty-five years underground had some form of pneumoconiosis, over half at least moderate in severity. *See* H.Rep. No. 151, 95th Cong., 2d Sess. 31, 34, *reprinted in* 1978 U.S. Code Cong. & Ad. News 237, 267, 270. Accordingly, we find that it was reasonable for the Congress to presume that miners with twenty-five years of experience were at least partially disabled by black lung and to put the burden on the mine operators to prove that they were not.[2]

■ Next, North American argues that section 921(c)(5) is unconstitutional because it retroactively creates new rights and new obligations. As written, the statute allows a deceased miner's survivors to file claims on behalf of employees who died many years before the statute's effective date. This challenge is also made under the due process clause. In the retroactive

context, the requirements of that clause are "met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guarantee Corp. v. R.A. Gray & Co.,* — U.S. —, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). In our case, the rational purpose is compensating survivors of deceased miners for the injury that the miners suffered because of black lung disability. The fact that the statute's retroactive application imposes new duties and upsets otherwise settled expectations is not sufficient to invalidate it, *id.* at 2718 (citing *Turner Elkhorn*, 428 U.S. at 15–16, 96 S.Ct. at 2892–93), unless the changes it imposes are "particularly 'harsh and oppressive.'" *Id.* at 2720 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n.13, 97 S.Ct. 1505, 1515 n.13, 52 L.Ed.2d 92 (1977) (quoting *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938))). Because retroactive application of this statute operates only to make mine operators responsible for compensating the families of employees injured by their conditions of employment, we cannot find that it is particularly harsh and oppressive.

■ North American asks us to consider the effect that the Supreme Court's decision in *Railroad Retirement Board v. Alton Railroad Co.,* 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468 (1935), has on the retroactivity analysis. In that case, the Supreme Court unanimously ruled that it is unconstitutional for the Congress to require employers to set up retroactive pension plans for their employees. Although this case was decided during the now discredited era of activist review of economic legislation under the due process clause, the Supreme Court has twice in recent years refused to disavow it, instead choosing to distinguish the current cases from it. *See Pension Benefit Guarantee Corp.,* 104 S.Ct. at 2720; *Turner Elkhorn*, 428 U.S. at 19–20, 96 S.Ct. at 2894–95. We will follow the same prudential course. As the court

---

**2.** Our holding on this point is consistent with decisions rendered by the Third and Seventh Circuits. *See United States Steel Corp. v. Ora-* vetz, 686 F.2d 197, 202 (3d Cir.1982); *Battaglia v. Peabody Coal Co.,* 690 F.2d 106, 111–12 (7th Cir.1982).

noted in *Turner Elkhorn,* the purpose of the Black Lung Benefits Act

> is not simply to increase or supplement a former employee's salary to meet his generalized need for funds. Rather, the purpose of the Act is to satisfy a specific need created by the dangerous conditions under which the former employee labored—to allocate to the mine operator an actual, measurable cost of his business.

428 U.S. at 19, 96 S.Ct. at 2894. Accordingly, it does not run afoul of the holding in *Alton Railroad.*

■ Finally, the company argues that the formula for awarding benefits is arbitrary and not rationally related to a legitimate government purpose. Under sections 921(c)(5) and 922(a)(2) a miner's survivors are entitled to recover the same benefits whether the miner's disability was partial or total. The company contends that the level of benefits awarded must be related to the degree of disability. We disagree. Under the company's theory, Congress has fully compensated black lung victims for being totally disabled, and therefore miners who are not totally disabled cannot be rewarded "full" compensation. The flaw in the company's reasoning is that there is no reason to believe that the amount that black lung recipients receive is "full" compensation. Black lung benefits are simply a series of payments intended to assist miners, who are disabled by black lung, and their survivors, and the benefits are not tied to the injury of each individual miner. *See* 30 U.S.C. § 922(a)(1). In section 921(c)(5), Congress decided that all miners who are partially or totally disabled after working over twenty-five years in the mines shall be entitled to black lung benefits. Whether this scheme undercompensates totally disabled miners, or overcompensates partially disabled miners, or possibly undercompensates both, is beyond the scope of inquiry of this Court. It is sufficient to note that it was not beyond the bounds of rationality for Congress to conclude that partially and totally disabled miners may receive the same benefits.

Finally, North American claims that the Black Lung Benefits Trust Fund, and not it, should be responsible for paying whatever benefits are owed to Ida Campbell. According to North American, the Trust Fund is solely liable for all benefits arising from *partial* disability and for benefits based on a disability in existence prior to December 31, 1969. Because Lawrence Campbell was only partially disabled, and because the administrative law judge found that Campbell's disability had been in existence for five years prior to his death (i.e., prior to December 31, 1969), North American maintains that the Trust Fund should be responsible for paying Ida Campbell's benefits. We disagree.

■ On its first point, North American argues that 30 U.S.C. §§ 931 & 932 only require coal mine operators to assume responsibility for claims resulting from "death or total disability due to pneumoconiosis" and not from partial disability. The company simply misreads the statutes. Section 932 specifically states that operators shall be responsible "with respect to entitlements established in paragraph (5) of section 921(c) of this title," i.e., for partial disability claims made by survivors under the section 921(c)(5) presumption.

■ The company's second point is also without merit. Section 932(c) of Title 30 provides, in part, that "no benefit shall be payable by any operator on account of death or total disability due to pneumoconiosis (1) which did not arise, at least in part, out of employment in a mine during a period after December 31, 1969 when it was operated by such operator ...." The burden of proving that the disability did not arise, at least in part, after December 31, 1969, is on the operator. *Trujillo v. Kaiser Steel Corp.,* 3 Black Lung Reporter 1–497, 1–524 (1980). Here, North American claims that the administrative law judge made an actual finding of fact that Lawrence Campbell's disability arose at least five years before his death, or sometime in 1969. We disagree. What the administrative law judge did find is that Ida Campbell *testified* that her husband's re-

duced activity around the house existed for at least five years prior to his death. This was simply a summary of a witness's testimony, not a finding of fact. North American offers no additional evidence to establish that Lawrence Campbell's pneumoconiosis did not arise, at least in part, during his three and one-half years of employment with North American after December 31, 1969. Therefore, it must pay Ida Campbell's survivor's benefits.

The decision of the Benefits Review Board is therefore affirmed.