Laura BEGLEY (Widow of Shaftner
Begley, deceased), Petitioner,

v.

CONSOLIDATION COAL COMPANY;
Director, Office of Workers' Compensa-
tion Programs, United States Depart-
ment of Labor, Respondents.

No. 86–3659.

United States Court of Appeals,
Sixth Circuit.

Submitted May 11, 1987.

Decided Aug. 20, 1987.

Rehearing Denied Oct. 19, 1987.

David Barnett, Charleston, W.Va., Bene-
fits Review Bd., U.S. Dept. of Labor, Office
of the Solicitor, U.S. Dept. of Labor, Wash-
ington, D.C., Bruce A. McDonald, J. Mi-
chael O'Neill, for respondents.

John David Preston, Paintsville, Ky., for
petitioner.

Before JONES and NELSON, Circuit
Judges, and CELEBREZZE, Senior
Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Petitioner Laura Begley ("Begley"), widow of deceased coal miner Shaftner Begley ("Shaftner"), appeals an affirmance by the Benefits Review Board, United States Department of Labor ("BRB" or "Board"), of an Administrative Law Judge's ("ALJ") determination denying her benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. (1982). Begley contends that the ALJ's conclusion that she was not entitled to benefits under the so-called "widow's presumption," 30 U.S.C. § 921(c)(5) (1982), was not supported by substantial evidence. We hold that this particular presumption to benefits can be rebutted by a showing that the etiology of the disability which the miner suffered at the time of his death was not the deceased's pneumoconiosis. Finding the ALJ's determination that Shaftner's disability was not caused by the pneumoconiosis which he had at the time of his death to be supported by substantial evidence, we affirm the denial of benefits to widow Begley.

## I.

Shaftner, a coal miner born in 1924 whose last employer was respondent Consolidation Coal Company ("Consolidation"), last worked for Consolidation on March 10, 1975, and died on April 13, 1975. Begley filed a claim for black lung benefits on May 27, 1975. After the claim was initially approved by the Department of Labor in 1979, Consolidation contested it, and the claim was forwarded to the Office of Administrative Law Judges in 1981 to be set for formal hearing. The administrative hearing was held before an ALJ on October 25, 1983.

At the hearing, Begley contended that she was entitled to benefits by application of section 411(c)(5) of the Black Lung Benefits Reform Act of 1977 ("Act"), 30 U.S.C. § 921(c)(5) (1982). Under this provision, the eligible survivors of a coal miner who died on or before March 1, 1978 and had accumulated twenty-five or more years of coal mine employment before June 30, 1971 are entitled to benefits unless it is established that the miner was not partially or

totally disabled due to pneumoconiosis at the time of his death. Id. Consolidation did not contest Begley's assertion that Shaftner had been employed in coal mines for over twenty-five years prior to June 30, 1971, and the ALJ found that Shaftner had met the time requirements of section 921(c)(5) in order to qualify Begley for survivor benefits. The ALJ also found that Shaftner had simple pneumoconiosis at the time of his death. The ALJ concluded, however, that Consolidation had rebutted the presumption by showing that the disability suffered by Shaftner prior to death was not caused by the miner's pneumoconiosis. Accordingly, the ALJ denied benefits to the Petitioner.

Following the BRB's affirmance of the ALJ's determination, this appeal ensued. On appeal, Begley contends that once it had been determined that she was qualified to receive benefits under section 921(c)(5), that Shaftner suffered from pneumoconiosis at the time of his death, and that Shaftner was at least partially disabled for coal mine employment when he died, her entitlement to survivor benefits had been conclusively established. Thus, according to Begley, the ALJ's denial of benefits was not supported by substantial evidence. For the reasons which follow, we disagree.

## II.

 Both the Act and the regulation implementing it provide:

> In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits ... unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis.

30 U.S.C. § 921(c)(5) (1982); see also 20 C.F.R. § 727.204(a) (1987). To invoke this "widow's presumption," all that needs to be shown is the requisite period of employment and the requisite date of death; the beneficiary's prima facie case of entitlement to benefits need not even include

proof that the miner suffered from pneumoconiosis. *Arch Mineral Corp. v. Director, Office of Workers' Compensation Programs*, 798 F.2d 215, 220 (7th Cir.1986). Once invoked, the miner is presumed to have died due to pneumoconiosis, and the burden of proof (production and persuasion) shifts to the employer or director to establish that the miner was not partially or totally disabled due to pneumoconiosis at the time of his death. *Id.* at 220; *Amax Coal Co. v. Director, Office of Workers' Compensation Programs*, 772 F.2d 304, 305 (7th Cir.1985); *see North American Coal Corp. v. Campbell*, 748 F.2d 1124, 1128 (6th Cir.1984); *Director, Office of Workers' Compensation Programs v. Congleton*, 743 F.2d 428, 431 (6th Cir.1984). The regulations define partial disability as a miner's "reduced ability to engage in his or her usual coal mine work or 'comparable and gainful work.'" 20 C.F.R. § 727.204(b); *Amax Coal Co.*, 772 F.2d at 307.

▪ Regarding the type and sufficiency of evidence which may be used by an employer to rebut the widow's presumption, the regulations state:

The following evidence alone shall not be sufficient to rebut the presumption:

(1) Evidence that a deceased miner was employed in a coal mine at the time of death;

(2) Evidence pertaining to a deceased miner's level of earnings prior to death;

(3) A chest x-ray interpreted as negative for the existence of pneumoconiosis;

(4) A death certificate which makes no mention of pneumoconiosis.

20 C.F.R. § 727.204(d). *See Bizzarri v. Consolidation Coal Co.*, 775 F.2d 751, 754 (6th Cir.1985) (the death certificate may only describe the immediate cause of death without mentioning the underlying etiology); *Amax Coal Co.*, 772 F.2d at 306; *Congleton*, 743 F.2d at 431 (death certificate alone not sufficient to rebut presumption); *Consolidation Coal Co. v. Smith*, 699 F.2d 446, 449 (8th Cir.1983) (evidence of continued mine employment up to time of death not sufficient); *Bishop v. Peabody Coal Co.*, 690 F.2d 131, 133 (7th Cir.1982); *Battaglia v. Peabody Coal Co.*, 690 F.2d

106, 113 (7th Cir.1982); *United States Steel Corp. v. Oravetz*, 686 F.2d 197, 200–01 (3d Cir.1982). Although a single category of this type of evidence, by itself, will not be sufficient to rebut the presumption, a conjunction of two or more does tend "to indicate the absence of reduced work ability," *Freeman v. Director, Office of Workers' Compensation Programs*, 687 F.2d 214, 217 (7th Cir.1982), and can suffice to defeat the presumption. *Bishop*, 690 F.2d at 134–36; *Battaglia*, 690 F.2d at 113; *see Congleton*, 743 F.2d at 431 (a death certificate with no mention of pneumoconiosis and extensive medical records without indications of the disease held sufficient to rebut the presumption); *Freeman*, 687 F.2d at 217 (presence of three of four section 727.204(d) factors held sufficient for rebuttal). Introduction of more than one category of evidence does not mandate rebuttal, however, *Oravetz*, 686 F.2d at 201, and the ALJ remains free to weigh conflicting evidence and discount the probative value of the rebuttal evidence. *See Arch Mineral Corp.*, 798 F.2d at 222. Most importantly, a conjunction of section 727.-204(d)-type evidence may not be sufficient to rebut the widow's presumption if the claimant presents independent evidence of the miner's disability prior to death. *Amax Coal Co.*, 772 F.2d at 307.

As will become apparent, however, the key to the resolution of this appeal lies not in scrutinizing the quantum and quality of the evidence which Consolidation supplied to rebut the "widow's presumption," but in determining the *ways* by which an employer can rebut the section 921(c)(5) presumption. The regulation implementing section 921(c)(5) states that "[i]n order to rebut this presumption the evidence must demonstrate that the miner's ability to perform his or her usual and customary work or 'comparable and gainful work' was not reduced at the time of his or her death or that the miner did not have pneumoconiosis." 20 C.F.R. § 727.204(c). This regulation suggests that only two avenues are available for rebutting the "widow's presumption." The Board and the Seventh Circuit, however, have interpreted the Act and corresponding regulations to provide

for a three-prong test, whereby a respondent can rebut the section 921(c)(5) presumption by showing that: "(1) the miner did not have pneumoconiosis; or (2) the miner was not totally or partially disabled at the time of his death; or (3) the partial or total disability which the miner may have suffered at the time of his death was not due to pneumoconiosis." *Arch Mineral Corp.*, 798 F.2d at 220; *Amax Coal Co.*, 772 F.2d at 305; *Bishop*, 690 F.2d at 134; *see also Battaglia*, 690 F.2d at 108; *Trujillo v. Kaiser Steel Corp.*, 3 Black Lung Rptr. 1–497, 1–516 (Benefits Review Board 1981). Under this test, a qualified survivor can be denied benefits despite the fact that the miner had pneumoconiosis and was partially or totally disabled at death, if the employer can establish that the *cause* of the deceased miner's total or partial disability was not his pneumoconiosis. *See Arch Mineral Corp.*, 798 F.2d at 221.

With this applicable law as background, Begley's contention on appeal will now be analyzed.

### III.

It is uncontroverted that the ALJ correctly determined that the presumption of section 921(c)(5) had been invoked when Begley showed that Shaftner had been a miner for more than twenty-five years prior to June 30, 1971 and had died before March 1, 1978. In addition, the ALJ, after reviewing twenty-two x-rays, most of which were negative for pneumoconiosis, but three of which showed the earliest stages of the disease, determined that Consolidation "cannot demonstrate the absence of pneumoconiosis in rebutting the presumption." Neither party questions this finding on appeal. Therefore, we may assume that Begley qualified for survivors' benefits under section 921(c)(5), and that Consolidation cannot rebut the presumption by showing that Shaftner did not have pneumoconiosis at the time of his death.

■ The record also supports Begley's assertion that Consolidation failed to demonstrate that Shaftner was not at least partially disabled at the time of his death. The employer introduced into evidence a death certificate which made no mention of pneumoconiosis and attributed Shaftner's death to "acute myocardial infarction due to coronary occlusion" as a result of "chronic arteriosclerotic cardiovascular disease," i.e., a heart attack. In addition, Consolidation pointed out that Shaftner had worked at the mine until a month before his death and introduced his tax returns to demonstrate no diminished earning capacity in the years immediately prior to his demise. Finally, numerous x-rays read negative for pneumoconiosis were introduced to establish that Shaftner neither suffered from pneumoconiosis nor was disabled. All of this evidence is section 727.-204(d)-type evidence, however, which together tends to support a finding of no disability, but fails in this case to accomplish rebuttal, because Begley produced credible affirmative lay testimony (at the hearing and by way of affidavit) demonstrating that Shaftner was at least partially disabled. Specifically, Begley and two of Shaftner's co-workers testified that in the years prior to his death, Shaftner became short of breath quickly, fatigued easily, and was kept up at night with choking and coughing spells. *Cf. Campbell*, 748 F.2d at 1127 (lay evidence similar to Begley's held sufficient to support a finding of disability); *Oravetz*, 686 F.2d at 200 (same). In addition, the ALJ appears to have accepted that Shaftner was disabled prior to death for the purposes of his analysis. Therefore, we find that Consolidation failed to rebut the presumption by demonstrating that Shaftner was not at least partially disabled when he died.

Begley contends that at this point the ALJ should have ended his inquiry and awarded her black lung benefits. This argument rests on the assumption that only two ways exist for rebutting the section 921(c)(5) presumption, namely, by showing that the deceased miner either did not have pneumoconiosis or was not at least partially disabled at the time of death. The basis for the ALJ's conclusion that Consolidation had successfully rebutted section 921(c)(5)'s presumption, however, was his finding that the employer had "demonstrated that, con-

sidered alone, the pulmonary or respiratory disease was not of sufficient severity *to have caused* this patient to be totally or partially unable to perform his work as a miner." *Jt.App.* 348 (emphasis added). Thus, although he did not expressly articulate the rebuttal test being used, it is clear that the ALJ was employing the three-prong test which permits rebuttal if the employer establishes that whatever disability was suffered by the miner was not caused by the miner's pneumoconiosis. The only remaining questions for our consideration, therefore, are whether the ALJ was justified in employing this rebuttal test which incorporates a causation element and, if so, whether the ALJ's conclusion that Consolidation had demonstrated that Shaftner's pneumoconiosis was not the cause of his disability was supported by substantial evidence.

### IV.

As previousiy noted, one part of the regulation implementing section 921(c)(5) states that "[i]n order to rebut this presumption the evidence must demonstrate that the miner's ability to perform his or her usual and customary work or 'comparable and gainful work' was not reduced at the time of his or her death or that the miner did not have pneumoconiosis." 20 C.F.R. § 727.204(c) (1986). The literal language of this subsection suggests, therefore, a two-prong test for the rebuttal of the widow's presumption which would act to require an award of benefits to Begley. Nevertheless, additional plain language in section 921(c)(5), its implementing regulation, and the legislative history accompanying the Act, convince us that rebuttal of the presumption is achieved if the deceased miner's disability was not caused by the miner's pneumoconiosis.

The Black Lung Benefits Act was legislated in 1969 for the express purpose of providing benefits "to coal miners who are totally disabled *due to* pneumoconiosis and to the surviving dependents of miners whose death was *due to* such disease; and to ensure that in the future adequate benefits are provided to coal miners and their dependents in the event of their death or

total disability *due to* pneumoconiosis." 30 U.S.C. § 901(a) (1982) (emphasis added). In other words, Congress, concerned with the significant number of coal miners who were "totally disabled *from* pneumoconiosis" and the "survivors of such miners whose death was *due to* this disease," sought to provide benefits "to coal miners and their dependents *where disability or death occurs from such disease.*" H.R. Conf.Rep. No. 761, 91st Cong., 1st Sess. 88, *reprinted in* 1969 U.S.Code Cong. & Admin.News 2578, 2603 (emphasis added). Congress later amended 30 U.S.C. § 921(a), which authorized payments of benefits "in respect of the death of any miner *whose death was due to* pneumoconiosis," Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91–173, § 411(a), 83 Stat. 742, 793, *reprinted in* 1969 U.S.Code Cong. & Admin.News 823, 880 (emphasis added), to add the phrase "or who at the time of his death was *totally disabled by* pneumoconiosis." Black Lung Benefits Act of 1972, Pub.L. No. 92–303, § 4(b)(1), 86 Stat. 150, 154, *reprinted in* 1972 U.S.Code Cong. & Admin.News 183, 188 (emphasis added). This amendment relaxed the requirements imposed on widows claiming black lung benefits by providing that "a widow would only have to establish that her miner husband was totally disabled *by* pneumoconiosis at the time of his death" to receive benefits. S.Rep. No. 743, 92nd Cong., 2d Sess. 8, *reprinted in* 1972 U.S.Code Cong. & Admin.News 2305, 2312 (emphasis added). Finally, the "widow's presumption," 30 U.S.C. 921(c)(5), was added in 1978 to provide eligible survivors with a rebuttable presumption of entitlement to black lung benefits. Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, § 3(a)(3), 92 Stat. 95, 96 (1978). By its plain terms, however, the presumption and its implementing regulation retained the causation language which permeates the Act and its legislative history by providing that entitlement to benefits is rebutted if "it is established that at the time of his or her death such miner was not partially or totally disabled *due to* pneumoconiosis." 30 U.S.C. § 921(c)(5) (1982) (emphasis added); *see also* 20 C.F.R. § 727.204(a) (1986).

In our view, a wooden interpretation of subsection (c) of 20 C.F.R. § 727.204, to the effect that only two means exist for rebutting the "widow's presumption," would be irreconcilable with the general purpose of the Act and the plain language of section 921(c)(5) and subsection (a) of the presumption's implementing regulation. Such an interpretation would permit the awarding of black lung benefits to the survivors of miners who died with a minimal degree of pneumoconiosis incapable of causing any disability, provided the miner was at least partially disabled by some other disease or incapacity, regardless of the etiology of the disability. We do not believe that such a result was intended by Congress. Therefore, we expressly adopt a three-prong test for the rebuttal of 30 U.S.C. § 921(c)(5), and hold that the presumption is rebutted if the respondent establishes that: (1) the miner did not have pneumoconiosis, or (2) the miner was not at least partially disabled at the time of death, or (3) the disability which the miner suffered at the time of death was not due to the miner's pneumoconiosis.

In joining the Board and Seventh Circuit on this point,[1] we hasten to reiterate that the burden of proof (both in terms of pro-

duction and persuasion) remains at all times with the party challenging the survivor's entitlement to benefits under section 921(c)(5).[2] Moreover, the presumption of entitlement to black lung benefits under this section will not be rebutted by merely demonstrating the existence of a concurrent disabling malady, *see Arch Mineral,* 798 F.2d at 221–22, since there may be more than one source of the miner's disability, and the miner's pneumoconiosis may still be sufficient, by itself, to render the miner at least partially disabled. Instead, we hold that a black lung respondent can succeed in rebutting the "widow's presumption" under the third prong of the rebuttal test only by establishing that there exists no causal link between the deceased miner's disability and the miner's pneumoconiosis, *i.e.,* only by showing that the etiology of the miner's disability was not the miner's pneumoconiosis.

## V.

■ Application of the causation prong of this rebuttal test demonstrates that the ALJ's finding of rebuttal in the instant case was supported by substantial evidence.[3] Consolidation's medical reports,

1. We are not unmindful that in *Director, Office of Workers' Compensation Programs v. Congleton,* 743 F.2d 428, 430 (6th Cir.1984), this court, tracking the language of 20 C.F.R. § 727.204(d), stated that rebuttal of the section 921(c)(5) presumption is accomplished when the director or employer "has shown either the absence of reduced work ability or the absence of the disease at the time of death." We are also aware that in *North American Coal Co. v. Campbell,* 748 F.2d 1124 (6th Cir.1984), an ALJ's award of benefits to a surviving widow was upheld when the court determined that credible lay testimony (similar to that produced by Begley in the instant case) provided substantial support for the conclusion that the deceased miner had been partially disabled by his simple pneumoconiosis prior to death. Despite *Congleton*'s articulation of a two-part rebuttal test and *Campbell*'s apparent *sub silentio* acceptance of the same, neither case hinged on, or called upon the court to adopt, a test for determining the ways in which the "widow's presumption" can be rebutted, as does the instant appeal. Not surprisingly, therefore, neither *Congleton* nor *Campbell* discussed the case precedents, such as the Board's decision in *Trujillo* and the Seventh Circuit cases, which had expressly adopted a three-part stan-

dard, and neither case expressly held that an employer has only two ways of rebutting section 921(c)(5)'s presumption. Thus, to the extent that either *Congleton* or *Campbell* impinge on the issue we reach herein, each of these prior cases must be considered merely dicta, not binding circuit precedent. *See Coca-Cola Co. v. Procter & Gamble Co.,* 822 F.2d 28, 30 & n. 1 (6th Cir.1987).

2. An eligible survivor claiming black lung benefits under section 921(c)(5) may feel "burdened" to produce evidence establishing an etiological link between the deceased miner's disability and the miner's pneumoconiosis in order to refute evidence offered by a respondent supporting rebuttal of the presumption under the third prong of the test we announce. This "burden" is no different, however, from the type which exists when a respondent offers rebuttal evidence to establish that the deceased miner either did not have the disease or was not disabled.

3. By statute, the BRB is "authorized to hear and determine appeals raising a substantial question of law or fact" taken from ALJ determinations. 33 U.S.C. § 921(b)(3) (1982). The findings of fact by an ALJ are "conclusive if supported by

particularly the report by Dr. Zaldivar, clearly stated that the etiology of Shaftner's medical problems was not his pneumoconiosis. Instead, the medical reports concluded that Shaftner's disability was readily attributable solely to his emphysema, caused by a forty-year, pack-a-day smoking habit, and his heart disease, for which Shaftner had first been hospitalized in 1972. This uncontroverted evidence, coupled with the fact that Shaftner's black lung was of the least severe type, *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976) (simple pneumoconiosis seldom productive of significant respiratory impairment); *cf. Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 591 (7th Cir.1985) (medical records showing no pneumoconiosis, although inconclusive on that point, still probative that disease had not progressed to point of disabling miner), supported the ALJ's finding that Shaftner's disability was not caused by the miner's pneumoconiosis.

Accordingly, the Board's affirmance of the ALJ's denial of black lung benefits to Begley is AFFIRMED.

substantial evidence in the record considered as a whole." *Id.* "The Board is not empowered to engage in *de novo* review of the record, and may not set aside an inference merely because it finds the opposite one more reasonable." *Bizzarri v. Consolidation Coal Co.*, 775 F.2d 751, 753 (6th Cir.1985) (citation omitted).

Appellate review of BRB decisions is similarly limited: "The court of appeals scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations.'" *Director, OWCP v. Rowe*, 710 F.2d 251, 254 (6th Cir.1983) (quoting

*Bumble Bee Seafoods v. Director, OWCP*, 629 F.2d 1327, 1329 (9th Cir.1980)). Thus, the question for this court is whether the BRB was correct in concluding that the ALJ's decision was supported by "substantial evidence." *See Bizzarri*, 775 F.2d at 753. "Substantial evidence is 'more than a mere scintilla;' substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir.1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).