836 F.2d 1348
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTH AMERICAN COAL COMPANY, Petitioner,
v.
Helen A. PATCH, widow of Patsy Patch, Director of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 87-3073.
 United States Court of Appeals, Sixth Circuit.
 Jan. 4, 1988.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner North American Coal Company ("North American") petitions for review of an order of the Benefits Review Board ("BRB") of the United States Department of Labor, which affirmed an Administrative Law Judge's ("ALJ") decision to award benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. For the reasons that follow, we reverse and vacate the award of benefits.
 
 I.
 
 2
 Helen A. Patch, surviving spouse of miner Patsy Patch ("decedent"), filed a claim for benefits under the Act on June 7, 1976, asserting that her deceased husband was totally disabled due to pneumoconiosis arising out of coal mine employment prior to his death and that her husband's lung impairment ultimately resulted in his death on June 2, 1976. A formal hearing was held on February 7, 1983, before an ALJ at which all parties were afforded the opportunity to present evidence and argument as provided in the Act and regulations issued thereunder. On January 9, 1984, the ALJ issued a Decision and Order awarding benefits to Mrs. Patch because of her deceased husband's disability prior to his death. North American appealed that decision to the BRB, and on December 30, 1986, the BRB affirmed the decision of the ALJ. A timely petition of review was then filed in this court.
 
 
 3
 The ALJ found that the decedent was a miner within the definition of section 402(d) of the Act, 30 U.S.C. Sec. 902, and section 725.202 of the Code of Federal Regulations ("CFR"). North American stipulated that decedent had thirty-three years of qualifying coal mine employment prior to leaving the company on December 4, 1975, and the ALJ so found. The ALJ also found, as was undisputed, that Mrs. patch married the decedent on August 16, 1936, and was married to him when he died on June 2, 1976, and was therefore eligible for benefits as a surviving spouse within the meaning of sections 725.212-515 of the regulations.
 
 
 4
 The decedent's medical history is also not in dispute. On December 4, 1975, he was admitted to Wheeling Hospital complaining of difficulty in swalling for several weeks. Upon his admission, the decedent provided a smoking history of two to three packs of cigarettes a day for many years.[1] In an attempt to establish a diagnosis, the decedent was subject to (1) chest X-rays that revealed a large mass in the right lung; (2) a percutaneous lung biopsy; (3) a bronchoscopy; (4) a scalene fat pad biopsy; and (5) a mediastinotomy. He was diagnosed as having a non-epithelial tumor of the lung compatible with leiomyosarcoma or, in lay terms, lung cancer.
 
 
 5
 After his discharge from Wheeling Hospital, the decedent was treated with cobalt and chemotherapy. He was later admitted to the Ohio Valley Medical Center on January 23, 1976, suffering from progressive weight loss and inability to swallow even liquids. A gastrostomy feeding tube was inserted and he was discharged on February 15, 1976, to continue therapy for his significantly worsened leiomyosarcoma on an out-patient basis.
 
 
 6
 His admission records from his hospital stay at Ohio Valley Medical Center indicate that except for the usual childhood diseases and the previously discovered cancer of the right lung, the decedent had no history of other significant disease. Multiple chest X-rays taken during the radiation therapy and the subsequent hospitalization indicated progressive changes in both lung bases due to the leiomyosarcoma.
 
 
 7
 After continuing cobalt treatments and chemotherapy, the decedent was admitted to the hospital again on May 22, 1976, complaining of weakness and vomiting blood. Chest X-rays taken during this hospitalization showed considerable amount of metastases throughout the chest. After several blood transfusions, the decedent lapsed into a coma and died on June 2, 1976. The final diagnosis rendered by his treating physician, Dr. P. Lancione, was ardenocarcinoma of the lung with metastasis. A subsequent statement issued by Dr. Lancione indicated that he had treated the decedent since the lung tumor had been found, and that his diagnosis of the decedent's condition was bronchogenic carcinoma of the lung. The death certificate signed by Dr. Lancione indicates ardenocarcinoma of the lungs as the cause of death.
 
 
 8
 The ALJ held that Mrs. Patch was entitled to benefits by application of section 411(c)(5) of the Black Lung Benefits Reform Act of 1977, 30 U.S.C. Sec. 921(c)(5). Under this provision, the so-called "widow's presumption,"
 
 
 9
 the eligible survivors of a coal miner who died on or before March 1, 1978 and had accumulated twenty-five or more years of coal mine employment before June 30, 1971, are entitled to benefits unless it is established that the miner was not partially or totally disabled due to pneumoconiosis at the time of his death.
 
 
 10
 Begley v. Consolidation Coal Co., 826 F.2d 1512, 1513 (6th Cir.1987). North American did not contest Mrs. Patch's assertion that the decedent had been employed in the mines for over twenty-fives years nor that Patch met the requirements in qualifying for survivor benefits. Instead, North American argued that the decedent did not have pneumoconiosis, and that any disability he may have suffered at the time of his death was not due to pneumoconiosis.
 
 
 11
 In addition to the death certificate and hospital medical records of the decedent, reports from two different physicians were presented to the ALJ. In September of 1980, Dr. Ronald J. Bacik, a board certified pulmonary specialist, reviewed all the medical evidence of record. Dr. Bacik concluded that (1) there was no evidence that the decedent had pneumoconiosis, (2) the cause of the decedent's death and disability was the leiomyosarcoma discovered in December of 1975, and (3) the leiomyosarcoma of the right lung was not caused by inhalation of coal dust. Dr. Bacik also stated that on the basis of the physical findings in the chest X-ray reports, it would appear that the decedent had nondisabling pulmonary emphysema related to his heavy smoking history.
 
 
 12
 North American also presented a report from Dr. Howard S. Van Ordstrand, a board certified pulmonary specialist and a recognized expert in the area of occupational lung disorders. Dr. Van Ordstrand reviewed the medical evidence of record, Mrs. Patch's affidavit describing her husband's condition, and the decedent's employment history. He concluded with "the most reasonable degree of medical certainty" that (1) the medical evidence, including multiple chest X-rays, mediastinoscopy, and lung biopsy revealed no evidence of pneumoconiosis; (2) the decedent's death and disability were caused by lung cancer; and (3) there was no relationship between the inhalation of coal dust and the decedent's lung cancer.
 
 
 13
 In spite of the above information, the ALJ held that North American had not adequately rebutted the presumption contained in the Act and ordered that North American pay Mrs. Patch benefits. North American appealed the ALJ's ruling to the BRB, which affirmed the ALJ's ruling. The issue before this court is whether the ALJ and the BRB erred in determining that North American failed to rebut the so-called widow's presumption contained in 30 U.S.C. Sec. 921(c)(5).
 
 II.
 
 14
 In Begley, 826 F.2d at 1513-14, (6th Cir.1987), we recently held that to invoke the widow's presumption, the beneficiary only needs to show "the requisite period of employment and the requisite date of death; the beneficiary's prima facie case of entitlement to benefits need not even include proof that the miner suffered from pneumoconiosis." Id. "Once invoked, the miner is presumed to have died due to pneumoconiosis, and the burden of proof (production and persuasion) shifts to the employer or director to establish that the miner was not partially or totally disabled due to pneymoconiosis at the time of his death." Id. at 1514. There are three ways the employer or director can rebut the widow's presumption: by showing that " '(1) the miner did not have pneumoconiosis; or (2) the miner was not totally or partially disabled at the time of his death; or (3) the partial or total disability which the miner may have suffered at the time of his death was not due to pneumoconiosis.' " Id. at 1515 (quoting Arch Mineral Corp. v. Director, Office of Workers' Compensation Programs, 798 F.2d 215, 220 (7th Cir.1986); see Amax Coal Co. v. Director, office of Workers' Compensation Programs, 772 F.2d 304, 305 (7th Cir.1985); Bishop v. Peabody Coal Co., 690 F.2d 131, 134 (7th Cir.1982)).
 
 
 15
 Under 20 C.F.R. Sec. 727.204(d), the regulation implementing section 411(c)(5) of the Act, 30 U.S.C. Sec. 921(c)(5), four types of evidence are inadequate, standing alone, to rebut the presumption.[2] However, "a conjunction of two or more does tend 'to indicate the absence of reduced workability.' " Begley, 826 F.2d at 1514 (quoting Freeman v. Director, Office of Workers' Compensation Programs, 687 F.2d 214, 217 (7th Cir.1982)). Finally, we held in Begley that "a conjunction of section 727.204(d)-type evidence may not be sufficient to rebut the widow's presumption if the claimant presents independent evidence of the miner's disability prior to death." Id. In the present case, however, Mrs. Patch is relying solely upon the presumption.
 
 
 16
 In holding that North American failed to overcome the presumption, the ALJ refused to give any probative value to either of the doctors' reports. First, the ALJ held that because Dr. Van Ordstrand had never examined the decedent, but based his conclusion solely on a review of medical evidence in the record, and did not re-read any of the chest X-rays or question the validity of the evidence, his opinion would not be considered. He also held that as none of the hospital examinations or diagnostic techniques were aimed at determining the presence or absence of pneumoconiosis, but were calculated to diagnose and treat lung cancer, the failure of those records to denote the presence of characteristics indicating pneumoconiosis was not a sufficient basis for inferring that the disease was not present. The ALJ also failed to give any probative value to the report of Dr. Bacik. The ALJ held that Dr. Bacik's report was speculative and therefore was insufficient to overcome the presumption.
 
 
 17
 In affirming the ALJ, the Board concluded that although the ALJ erred in discrediting Dr. Van Ordstrand's opinion because he was a non-examining physician, the ALJ could still properly reject both of the doctors' opinions as unsupported by the underlying documentation. Further, the Board held that the ALJ could exercise his discretion and find that the hospital records, death certificate, and treating physician's statement were factually insufficient to support an inference of the absence of a disease. We disagree.
 
 
 18
 In reviewing decisions of the BRB, this court " 'scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations.' " Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254 (6th Cir.1983) (quoting Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980)). The question is whether the BRB was correct in its conclusion that the ALJ's determination was supported by substantial evidence. See Bizzarri v. Consolidation Coal Co., 775 F.2d 751 (6th Cir.1985).
 
 
 19
 We first dealt with the widow's presumption in Director, Office of Workers' Compensation Programs v. Congleton, 743 F.2d 428 (6th Cir.1984). There, the ALJ applied the presumption and awarded benefits. That award was affirmed by the BRB. We reversed, holding that the decedent's medical records were devoid of any reference to a chronic lung impairment and that the decedent's death certificate listed only myocardial infarction as a cause of death. We held that "[w]hile the death certificate by itself would not be sufficient to rebut the presumption, the certificate, when paired with the extensive medical records of the miner's own treating physicians which contained absolutely no indication that the miner was suffering from pneumoconiosis, constitute sufficient grounds for rebuttal." Id. at 431 (citation omitted). In this case, as in Congleton, there is a complete absence of any indication in the decedent's medical records that he was suffering from pneumoconiosis.
 
 
 20
 The fact that none of the hospital examinations or diagnostic techniques were aimed at determining the absence or presence of pneumoconiosis is an insufficient basis for refusing to consider a doctor's opinion that the disease was not present. A patient does not have to be examined for pneumoconiosis, especially when he has undergone numerous chest X-rays and other diagnostic tests to determine the cause of a lung impairment. Moreover, a reviewing physician is not required to re-read X-rays when there is no indication in the record that the initial reading was erroneous.
 
 
 21
 The ALJ also erred in holding that the tests performed during the last six months of the decedent's life were beyond the area of "specific concern" and therefore without probative value. As the record indicates, prior to December of 1975, the decedent suffered no significant illness. In December of 1975, he was hospitalized for difficulty in swallowing, and from that point on his lungs came under very close medical scrutiny; first, to detect any abnormality and then to determine the progression of lung cancer and the effectiveness of the different types of treatment. The decedent's lungs were examined thoroughly and in various ways during the last six months of his life. We will not hold, as did the ALJ, that the physicians treating him during this time had, as a matter of law, "tunnel vision" such as to preclude a diagnosis of pneumoconiosis. If the ALJ's holding were allowed to stand, the rebuttable presumption would be turned into an irrebuttable one, as it would be impossible for a party to rebut the presumption in any case where the decedent was not ill prior to being hospitalized and diagnosed with a terminal illness other than pneumoconiosis.
 
 
 22
 Finally, the ALJ erred in holding that the opinions of Dr. Bacik and Dr. Van Ordstrand were too speculative to provide probative value. There is no evidence to support that conclusion. Both doctors gave an unequivocal medical opinion that the decedent did not have pneumoconiosis. The justifications of the ALJ and the BRB for discounting their opinions have been shown to be erroneous. As we have previously held, the presumption of death and disability can be rebutted if negative X-rays, along with reasoned medical opinion based thereon, establish that the miner did not have pneumoconiosis. See Ansel v. Weinberger, 529 F.2d 304 (6th Cir.1976). In the present case, the decedent's medical records are devoid of any reference to pneumoconiosis. His death certificate is also devoid of any reference to pneumoconiosis and indicates lung cancer as the cause of death. Under our holding in Congleton, such is clearly adequate to rebut the presumption. In the present case, the negative X-rays of the decedent also provide evidence rebutting the presumption, as does a letter from the decedent's own treating physician, Dr. Lancione, indicating that the decedent died from lung cancer, not pneumoconiosis. When the evidence improperly discounted by the ALJ and the BRB is also considered, the presumption is more than adequately rebutted. There is simply no evidence to support a holding to the contrary.[3]
 
 III.
 
 23
 Accordingly, for the foregoing reasons, the decision of the Board is REVERSED, and the award of benefits is VACATED.
 
 
 
 [1]
 Mrs. Patch testified that her husband had smoked as long as she had known him
 
 
 [2]
 Subsection (d) provides:
 (d) The following evidence alone shall not be sufficient to rebut the presumption:
 (1) Evidence that a deceased miner was employed in a coal mine at the time of death;
 (2) Evidence pertaining to a deceased miner's level of earnings prior to death;
 (3) A chest X-ray interpreted as negative for the existence of pneumoconiosis;
 (4) A death certificate which makes no mention of pneumoconiosis.
 
 
 [20]
 C.F.R. Sec. 727.204(d)
 
 
 [3]
 The record is also devoid of any evidence that the lung cancer resulting in the death of decedent was caused by pneumoconiosis. All the evidence in that regard in the record indicates that there is absolutely no causal link between lung cancer and pneumoconiosis. Therefore, the ALJ also erred in concluding that pneumoconiosis was the cause of the decedent's death and/or disability. See Begley, supra